[Civ. No. 20351.   Second Dist., Div. Three.   Aug. 2, 1954.]

CARYL WARNER, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

822

Caryl Warner, in pro. per., Morris R. McLaughlin and Don R. Holt for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux and David D. Mix, Deputy County Counsel, for Respondents.

SHINN, P. J.—Prohibition to restrain the superior court from executing an order sentencing petitioner to jail for five days on each of three convictions of contempt.

The proceeding in contempt was initiated by affidavit of Jeanne deKolty Warner. It alleged that on April 18, 1950, in an action for divorce between the affiant and petitioner herein, Caryl Warner, petitioner was ordered to pay for the support of Jeanne $20 per week and for support of minor children $30 per week; that on November 1, 1951, the court modified the order by ordering petitioner to pay ". . . $40.00 per week in all, to wit: $10.00 per week for the support of Paul James Warner, $10.00 per week for the support of John Caryl Warner, and $20.00 per week for the support of

Carolyn Jean Warner, . . . until the further order of this court, and said payments of $20.00 weekly for the said minor child, Carolyn, shall be contingent upon the compliance by plaintiff with the child visitation provision of this order." (Petitioner was excused from paying for Carolyn for two weeks following any failure of plaintiff to make Carolyn available for visitation under the conditions specified in the order.) The affidavit stated: "THAT SAID JUDGMENT by Judge Clifton of November 1, 1951 is now on appeal." It was alleged that James was not living with his mother and that the order of April 18, 1950, required the payment of $30 per week for the other children. The affidavit stated that under the April, 1950 order there was a delinquency of $3,235 and that the delinquency under the November, 1951 order was $320. It was averred that petitioner had notice of said orders. The affidavit did not accuse petitioner of having failed or refused to make any specific payment at any specified time under either the order of April, 1950 or the order of November, 1951. Petitioner filed a replication denying that he was in arrears under the 1950 order and alleging that he was paid up in advance under the 1951 order. He also alleged that he had given his children presents of more than $1,000, paid through the court trustee, that he had not willfully disobeyed any order of the court, and he offered to pay any sum found to be due at the earliest possible time. It was further alleged that plaintiff had willfully prevented petitioner from visiting with Carolyn ever since April 4, 1952 except on three occasions, and, in addition, on a shopping tour at Christmas of one hour's duration. The replication further set forth proceedings in contempt which were initiated by plaintiff under the November, 1951 order. On May 26, 1952, the court found in that proceeding that petitioner was in arrears in the sum of $95 under the 1951 order. The clerk's minutes show that upon the court's finding the amount of the arrears petitioner paid the same through the court trustee and the proceeding in contempt was dismissed.

The instant proceeding in contempt was heard and the court announced in writing its decision. Petitioner was declared to be guilty of three violations of the 1950 order, namely, in failing to make the payments of $30 which fell due respectively on January 9th, March 6th and March 20th, 1954. The court's memorandum reads: "The judgment of the Court will be that for each such offense defendant will serve five days in the Los Angeles County Jail. The sentences

as to the last two will be served consecutively. The other is to be served concurrently." Further the court declared: "The evidence shows that plaintiff deliberately albeit to suit her own selfish convenience, deprived defendant of his right to have the child Carolyn from June 20 to July 20, 1953.

"This interference with defendant's right to physical possession of the child Carolyn constitutes a contempt. The judgment of the Court will be that for that offense plaintiff will serve five days in the Los Angeles County Jail." Issuance of commitments was deferred by the trial court.

Petition for a writ of prohibition was filed, plaintiff filed her opposition to issuance of an alternative writ; the writ was issued, staying further proceedings, respondent court has filed its return, and the matter has been submitted.

In the present proceeding the sole question is whether the court acted within its jurisdiction. This brings in question the sufficiency of the affidavit to state facts constituting the offense charged.

It is well established in this state that the affidavit by which a contempt proceeding is instituted, in order to sufficiently support an adjudication of contempt, must state facts constituting the offense; otherwise the court is without jurisdiction. (*Berger* v. *Superior Court,* 175 Cal. 719 [167 P. 143, 15 A.L.R. 373] ; *In re Wood,* 194 Cal. 49 [227 P. 908] ; *Doyle* v. *Superior Court,* 113 Cal.App.2d 880 [249 P.2d 298].) No intendments or presumptions can be indulged in aid of the sufficiency of the proceedings (*Frowley* v. *Superior Court,* 158 Cal. 220 [110 P. 817] ) ; it is immaterial as affecting the sufficiency of the affidavit what facts are proved or found by the court (*Ex parte Von Gerzabek,* 63 Cal.App. 657 [219 P. 479] ) ; and the accused is entitled to be clearly and fairly apprised of the particular accusation against him. (*In re Felthoven,* 75 Cal.App.2d 465 [171 P.2d 47].)

The facts essential to establish jurisdiction were (1) the making of the order, (2) knowledge of the order, (3) ability of the respondent to render compliance, and (4) willful disobedience of the order. None of these elements could be supplied in the present case except by the affidavit. There is also the requirement that the accused be proceeded against under due process. We have concluded that there was no sufficient showing by affidavit that petitioner had willfully violated either order of the court.

A proceeding in contempt for failure to pay alimony

or support money is primarily a method of collecting money that cannot be realized through execution process. It is a coercive measure designed to compel obedience to the court's orders rather than one to vindicate the authority of the court by inflicting punishment. ■ Nevertheless, there is no special procedure prescribed for the enforcement of such orders in domestic relations matters, and there can be no relaxation of the rules which govern the exercise of the extraordinary powers of the court which are invoked.

■ The contempt proceeding here was essentially one for the settlement of a dispute as to the amount that was due and unpaid. Plaintiff was claiming several thousand dollars, petitioner answered that he owed nothing and the court found him in default as previously stated. The order issued upon plaintiff's affidavit directed petitioner to show why he should not be adjudged guilty of contempt for willfully disobeying the order of April 1950 and the order of November 1951, "as more fully described in' the affidavit of Jeanne deKolty Warner" etc. The affidavit charged only that petitioner was in arrears in the amount of $3,235 under the first order and $320 under the second order. Although it was alleged that "defendant has sufficient income to comply with the above mentioned orders," it was not alleged that petitioner willfully failed or refused to pay the entire accumulated sums or any part of either of them. From the time of the 1950 order to the date of plaintiff's affidavit 206 weekly payments had fallen due. That order fixed the payments at $20 per week for plaintiff and $30 per week for the children, but the affidavit did not state that the allowance to plaintiff had been·cut off and the allowance for the children left at $30 per week. If the delinquency amounted to $3,200 this would mean an arrearage equal to 64 weeks at $50 per week; at $30 per week, to 100 weeks. Accusing petitioner of being in arrears in the amount of $3,235 was no more a charge that he was guilty of three acts of contempt on January 9th, March 6th and March 20th, 1954, than it was a charge that he was guilty of 64 or 100 willful violations of the order. If, upon a mere showing of the amount of the delinquency petitioner could be found guilty of contempt, the adjudication could have been based upon the omission to make any payment or payments which went to make up the total amount of the alleged arrearage. ■ Due process demands that the accusation be stated with sufficient particularity to enable the accused to prepare his defense. A blanket charge under which

evidence could be received as to 50 or 100 separate instances of alleged failure to comply with an order of court does not comport with due process. If mere evidence that petitioner was in arrears would support an adjudication of contempt the burden would be cast upon him to overcome that evidence or to justify each and every failure to meet the payments. He would thus be required to affirmatively establish his innocence. "Willful disobedience of any process or order lawfully issued by any court" is made a misdemeanor by section 166, subdivision 4 of the Penal Code. ▇ A proceeding in contempt originated by citation is criminal in nature. (*Hotaling* v. *Superior Court*, 191 Cal. 501 [217 P. 73, 29 A.L.R. 127].) If the evidence against him does not establish his guilt the accused has nothing to controvert or explain. If the accusation does not state facts constituting the offense it is insufficient to support a conviction.

▇ In the absence of allegation in the affidavit that petitioner willfully failed or refused to comply with the order the facts stated were insufficient to constitute contempt. It was to be presumed that any failure to make payments as they matured was due to an honest belief on the part of petitioner that he was not required to make them. The affidavit was fatally defective in this respect. Although it is not pertinent to the question of the sufficiency of the affidavit it is a fact that there was wide disagreement between the parties as to the existence of a delinquency.

A further question is discussed by the parties concerning the allegation of the affidavit that petitioner had violated not only the order of 1950 but also the order of November, 1951, in that he was $320 in arrears under the latter order. The terms of the two orders were quite different. Petitioner might have been charged with violation of each of the orders, but this could have been done effectively only by charging specific violations. The general charge that petitioner was in arrears under each order made all the more defective the accusatory allegations.

The court found petitioner guilty of violations of the 1950 order. The 1951 order was determined to be of no effect because plaintiff had given notice of appeal from it, notwithstanding the fact that she had taken no steps toward perfecting her appeal. Nevertheless, in an earlier contempt proceeding petitioner had been charged with violation of that order and had been purged of contempt. It is insisted by petitioner that the prosecution by plaintiff of the former contempt pro-

ceeding under the 1951 order, in which she claimed and was awarded benefits thereunder, amounted to an abandonment of the appeal, citing American Jurisprudence, section 214, page 975, section 219, page 981. Therefore, it is argued, only the 1951 order was in effect. The differences in the two orders would have made it possible for petitioner to comply with the later order in a manner which would fall short of compliance with the earlier order. It was not determined that petitioner was guilty of violation of the 1951 order. It is unnecessary to decide whether plaintiff had abandoned her appeal, and whether the 1950 order was superseded by the later order.

There is the further question whether under the charge laid in this proceeding petitioner could properly have been found guilty of more than one offense of contempt. It is unnecessary to discuss this question, or other contentions of petitioner.

Where the party cited asserts his ability and willingness to pay whatever is found due, the long established practice of our courts is to fix a time within which payment must be made and not to send the delinquent to jail forthwith. Although the record discloses a history of extended litigation and incessant court proceedings between these parties, attendant upon and following their divorce, any annoyance they may have caused the courts does not warrant the employment of informal or irregular procedure in the exercise of the court's powers to punish for contempt.

Let a writ issue restraining enforcement of the order as to petitioner.

Wood (Parker) J., and Vallée, J., concurred.