[No. B055594. Second Dist., Div. Four. May 31, 1991.]

In re OSCAR LEE COWAN on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Michael H. Sklar and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

Morris, Polich & Purdy and Eugene P. Ramirez for Respondent.

**OPINION**

**WOODS (A. M.), P. J.**—Petitioner Oscar Lee Cowan seeks extraordinary relief from orders of a judge of respondent Municipal Court of the County of Los Angeles finding him in contempt of court and sentencing him to 72 hours in the county jail. After review, we conclude that the court did not comply with the statutorily prescribed procedure mandated by Code of Civil

Procedure section 1211. The order of contempt was, therefore, an act in excess of jurisdiction and void.

The incident which gave rise to the contempt order occurred on the second day of petitioner's jury trial on charges that he drove a vehicle while under the influence of alcohol. At the end of the day, one of the jurors, Mr. Pinkett, left the courthouse and walked toward his bus stop. As he was waiting on a street corner for a traffic signal to change, he noticed petitioner at the same location. Petitioner said something which Mr. Pinkett did not hear and then said, " 'That's right, we're not supposed to speak.' " The signal changed and Mr. Pinkett hurried off to catch his bus.

The next morning Mr. Pinkett told fellow juror Mr. Troupe of the incident and asked whether he should inform the court of the incident. Mr. Troupe advised Mr. Pinkett to report it to the court. Mr. Pinkett told the bailiff, who passed the information on to the judge.

Shortly before the noon recess, the trial court stated: "It appears that one of the jurors has told the bailiff that your client made an attempt to talk to one of the jurors. I gave clear warning that no one is to have contact with the jurors. [¶] Now, sir, I am ready to hold you in contempt of the court, if that's proved. You jeopardized this entire trial and we will have a hearing about that when we return at 1:30. And if that is true, sir, you will be held in contempt of court. [¶] . . . [¶] . . . If you so much as said 'hello' to them I'm going to hold you in contempt."

After the noon recess, and outside the presence of the jury, the court declared it was "going to have . . . proceedings" to determine "what contact was made by the defendant with the juror." Defense counsel's request to be heard was denied, and Juror Pinkett was called into the courtroom.

During informal proceedings in which Mr. Pinkett was neither sworn nor seated on the witness stand, he described the events of the previous afternoon. In response to questioning by counsel, Mr. Pinkett estimated that the statement which he did not hear took no more than three to five seconds. He stated he had no eye contact with petitioner. Mr. Pinkett considered the conversation "harmless" and emphasized that he would have "blow[n] it off" if it were not for the fact that the court had instructed that there should be no contact.[1]

---

[1]The record before us demonstrates that during jury selection the court instructed the jury: ". . . Now, during the trial you may meet the attorneys, witnesses, or defendant in the hallway or elevators or outside the courtroom. Don't think that they are unfriendly when they don't speak to you. They are merely obeying the court's order not to speak to you until the trial has ended and your deliberations have concluded. [¶] Now, the attorneys have instruc-

Mr. Troupe was then questioned in similarly informal proceedings. Due to the possibility that other jurors may have overheard the conversation between Mr. Pinkett and Mr. Troupe, the court called the entire jury into the courtroom and asked whether anyone overheard a conversation between "a couple of jurors in the hallway . . . [at] any time" that day. The transcript does not reflect a verbal response to the question. It supports the inference, however, that the response was negative.

Outside the presence of the jury, a defense motion for mistrial was denied and a motion to disqualify Mr. Pinkett and Mr. Troupe was granted. The court then asked whether the defense wished to present anything before its ruling. Defense counsel argued that the court could not rule on the issue of contempt because no affidavit had been filed as required by Code of Civil Procedure section 1211.[2] The trial court rejected this argument, explaining: "[T]he testimony and the cross-examination of witnesses is at least as good as a declaration. In fact it's better than a declaration that you're referring to that's required. And I think certainly it can be construed as a type of declaration."

Defense counsel also argued that if petitioner's statement, " 'Oh, I am not allowed to speak to you,' " violated a court order, that order was invalid for overbreadth. The court did not specifically address this argument. It did, however, rule that petitioner's conduct in speaking to Mr. Pinkett, the resulting disqualification of two jurors and motion for mistrial, and the fact that the incident was the second occasion in which petitioner failed to respect a court order[3] were "sufficiently serious to warrant a conviction of contempt." The court stayed the sentence until the end of trial.

The court then called the jury into the courtroom, excused Mr. Pinkett and Mr. Troupe and asked the two alternates to take their places. Shortly after the trial was recommenced, the court asked the jury to leave and recalled Mr. Pinkett and Mr. Troupe to the courtroom. The two men were sworn and asked by the court whether the answers they previously gave concerning the incident were all true. Both replied affirmatively.

tions not to speak to you and they have instructions that their clients and witnesses are not to speak to you, that they are to have no contact with you outside of the court proceedings. [¶] And the reason for that is that we must have a jury that is not only fair and unbias [sic], but where there is no appearance whatsoever of any impropriety. [¶] If there is contact, verbal or otherwise, we'll have to hold a hearing to find out what was said or what passed between you. We will have to decide whether you can remain on the jury. We will have to decide whether the trial can continue. [¶] Now, we avoid all that very simply by their not having any contact whatsoever with you and we avoid having any appearance of any impropriety."

[2]According to the reporter's transcript defense counsel relied on section "211." This is apparently a clerical error or a misstatement.

[3]The first occurred when petitioner arrived 25 minutes late for court on the previous day.

Petitioner subsequently entered a plea of no contest to driving with a suspended license in violation of Vehicle Code section 14601. The remaining counts were dismissed.

On January 11, 1991, the superior court denied petitioner's request for writ of habeas corpus on the ground that "[t]he trial court complied with all requirements for a finding of indirect contempt. The hearing obviated the affidavit requirement."

On January 16, 1991, this court stayed execution of the sentence. Thereafter, on March 7, 1991, we issued an order to show cause why the judgment of contempt should not be vacated.

I

Before we discuss the merits of the case, we must deal with one procedural matter. The unverified return of respondent municipal court was signed by counsel "on behalf of the Honorable Joseph V. Riggio, acting in his capacity as Judge of the Los Angeles Municipal Court." Petitioner has moved for an order striking the return on the ground that it is not verified as required by Penal Code section 1480, subdivision 5.[4] Respondent's opposition to the motion claims that verification is not required because respondent, i.e., Judge Riggio, is a public officer. Petitioner counters that Judge Riggio did not sign the return, that a municipal court judge is a state employee, not a state officer, and that in any event Judge Riggio is not the respondent in this case. Petitioner concedes that Judge Riggio might be permitted to sign the return as a representative of the municipal court, but in such event the return would still need to be verified.

If we were to grant petitioner's motion to strike, we would be inclined to grant any request which respondent might make for permission to cure the defect in the failure of verification. (See *Franchise Tax Bd.* v. *Municipal Court* (1975) 45 Cal.App.3d 377, 384 [119 Cal.Rptr. 552].) Further, the net effect would certainly be the refiling of an identical return. This court has previously expressed its disinclination to indulge in "[s]uch self-flagellation of the justice system . . . ." (*Solomon* v. *Superior Court* (1981) 122 Cal.App.3d 532, 538 [177 Cal.Rptr. 1].) Therefore, rather than subject the parties and this court to such an unnecessary delay in the administration of justice, we regard the allegations of respondent's return to be equally binding and subject, in every sense, to the same construction as though they were verified. With this matter resolved, we turn to the substantive issues.

[4]Penal Code section 1480, subdivision 5 provides: "The return must be signed by the person making the same, and, except when such person is a sworn public officer, and makes such return in his official capacity, it must be verified by his oath."

## II

Respondent concedes that this case presents an issue of indirect contempt. Respondent also concedes that in such cases Code of Civil Procedure section 1211[5] requires the proceedings to be initiated by the filing of an affidavit setting forth the facts on which the contempt charge is based. Respondent nevertheless contends, without citation of supporting authority, that this requirement was satisfied by the live testimony of the two jurors. Respondent argues that since petitioner was "apprized [sic] of the charges in open court," represented by counsel, and afforded the opportunity to cross-examine the witnesses and to testify on his own behalf, his rights were "not infringed upon by Judge Riggio's decision to conduct a live hearing on the contempt issue."[6]

It has long been the rule that the filing of a sufficient affidavit is a jurisdictional prerequisite to a contempt proceeding. (See *Warner* v. *Superior Court* (1954) 126 Cal.App.2d 821, 824 [273 P.2d 89].) The question presented is whether this rule was abrogated with the enactment, in 1970, of Code of Civil Procedure section 1211.5, which provides in relevant part: "(a) If no objection is made to the sufficiency of such affidavit or statement during the hearing on the charges contained therein, jurisdiction of the subject matter shall not depend on the averments of such affidavit or statement, but may be established by the facts found by the trial court to have been proved at such hearing, and the court shall cause the affidavit or statement to be amended to conform to proof."

The complete absence of a charging document still causes an order of contempt to be procedurally invalid. This principle was reaffirmed in *Ryan* v. *Commission on Judicial Performance* (1988) 45 Cal.3d 518, 532 [247 Cal.Rptr. 378, 754 P.2d 724, 76 A.L.R.4th 951],[7] in which the California

---

[5]Code of Civil Procedure section 1211 provides in relevant part: "When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers."

[6]Respondent inexplicably contends that the reporter's transcript of the hearing or the written order of contempt, should "suffice" to satisfy the requirement of an affidavit. Respondent claims the transcript of the hearing is actually "more advantageous then [sic] an affidavit because it contains a verbatim recitation of the essential facts elicited during the contempt proceeding." This in no way satisfies the requirement of a charging document.

[7]In response to the concurring opinion, we observe that we have addressed *Ryan* because it was cited and argued by the parties to this litigation as the only case, since the enactment of Code of Civil Procedure section 1211.5, which has commented upon the issue before us. There is no basis for any implication that the conduct here in any way equates with the conduct in *Ryan*, which of course involved many other issues and many instances of misconduct. Cases involving the Commission on Judicial Performance frequently are cited for legal principles which do not involve judicial misconduct. (See, e.g., *People* v. *Carlucci*

Supreme Court stated: "[Code of Civil Procedure] [s]ection 1211 requires that an affidavit be presented to the judge reciting the facts constituting contempt. No such affidavit was presented. Judge Ryan found Starks guilty of contempt merely on the basis of the unsworn testimony presented in his chambers. Thus, the Commission was correct in concluding that Judge Ryan's contempt order was procedurally invalid."

Respondent attempts to distinguish *Ryan* contending that in the case before us the hearing took place in open court, after "notice" was given, and with opportunity for cross-examination. We find this attempt unpersuasive. The minor differences in the procedure employed in this case are insignificant. Here, as in *Ryan*, both the notice[8] and the hearing consisted of the taking of unsworn testimony. It is of no import that the unsworn testimony was given in the courtroom in this case rather than in chambers.

We turn, then, to the issue of the proper disposition in light of this error. Respondent contends that the absence of an affidavit was a technical defect as to which petitioner cannot demonstrate a miscarriage of justice or prejudice of any substantial right. The authority cited in support of this contention is Code of Civil Procedure section 1211.5, which provides: "No order or judgment of conviction of contempt shall be set aside, nor new trial granted, for any error as to any matter of pleading in such affidavit or statement, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Code Civ. Proc., § 1211.5, subd. (c).)

The stated purpose of Code of Civil Procedure section 1211.5 is to set forth the rules for construction, amendment and review of an affidavit or statement of facts. Cases in which orders of contempt have been upheld pursuant to section 1211.5 have involved situations in which there was some charging statement or affidavit, albeit defective. (See, e.g., *Mossman* v. *Superior Court* (1972) 22 Cal.App.3d 706, 710 [99 Cal.Rptr. 638]; *Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158 Cal.App.3d 604, 617, 620 [204 Cal.Rptr. 786].)

If we were to apply Code of Civil Procedure section 1211.5 in a case where no affidavit or statement of facts ever existed, we would render

(1979) 23 Cal.3d 249, 258 [152 Cal.Rptr. 439, 590 P.2d 15]; *People* v. *Cartwright* (1980) 107 Cal.App.3d 402, 415 [166 Cal.Rptr. 37].) The absence of any case extensively discussing the effect of Code of Civil Procedure section 1211.5 is, of course, the reason for publication of this opinion. (Cal. Rules of Court, rule 976(b).)

[8]Three entries in the docket are noteworthy on the issue of notice. The first indicates "Discussion at 11:52 a.m. about Defendant talking to one of the jurors." The next states: "Cause called at 1:30 p.m.: (Contempt Hearing Proceedings) . . . ." The third, written in a different hand and ink, and clearly added at a later time, states: "At 1:30 p.m. Defense noticed of contempt hearing and reasons thereof."

meaningless the unamended language of Code of Civil Procedure section 1211 which requires that "an affidavit *shall* be presented to the court or judge of the facts constituting the [indirect] contempt, . . ." (Italics added.) Such an interpretation would violate the guiding principle of statutory interpretation that " ' "a construction making some words surplusage is to be avoided." ' [Citation.]" (*Martinez* v. *Traubner* (1982) 32 Cal.3d 755, 758 [187 Cal.Rptr. 251, 653 P.2d 1046].) Therefore, respondent's contention lacks merit.

Petitioner contends that since an affidavit is a jurisdictional prerequisite for proceedings involving an indirect contempt, the order is void and prejudice is irrelevant. Although the cases cited by petitioner in support of this proposition were decided before the enactment of Code of Civil Procedure section 1211.5, our research supports the conclusion that the enactment of section 1211.5 has not changed the law with regard to the jurisdictional nature of the affidavit.[9]

In *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 242 [124 Cal.Rptr. 174, 540 P.2d 14], the California Supreme Court issued a writ of prohibition forbidding the continuation of contempt proceedings where the trial court permitted a district attorney to prosecute a civil contempt. The court explained: " ' "[I]t seems well settled (and there appears to be no case holding to the contrary) that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction" . . . Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari*.' [Citation.]" (Original italics.) (15 Cal.3d at p. 242, quoting *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 290-291 [109 P.2d 942, 132 A.L.R. 715].)

In cases of indirect contempt the affidavit required by statutory declaration is the means by which the accused is given notice of the nature of the charge against which he must defend. (*Freeman* v. *Superior Court* (1955) 44

---

[9]We note that in the Witkin discussion of indirect contempt, it is stated: "It was formerly the rule that a *sufficient* affidavit was jurisdictional, and, if defective, could not support an adjudication of indirect contempt, even though the facts proved and found would support it. [Citation.] C.C.P. 1211.5, enacted in 1970, abrogated that rule. The affidavit is no longer jurisdictional; it may be amended to correct any defect or to conform to proof; and a contempt adjudication can be set aside for *insufficiency* of the affidavit only under the constitutional test of reversible error, i.e., prejudice amounting to a miscarriage of justice. [Citation.]" (Italics added.) (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 177, p. 174.) This is not a pronouncement that the requirement of an affidavit has been abrogated or that the error should be judged by the miscarriage of justice standard where there is no affidavit.

Cal.2d 533, 536-537 [282 P.2d 857]; *Mery* v. *Superior Court* (1937) 9 Cal.2d 379, 380 [70 P.2d 932]; *In re Gould* (1961) 195 Cal.App.2d 172, 175 [15 Cal.Rptr. 326].) If the document by which this notice is given is defective, the accused can object and the document can be amended. (*Mossman* v. *Superior Court, supra*, 22 Cal.App.3d at p. 710.) If there is no such document, however, the accused has been deprived of the notice to which he is statutorily and constitutionally entitled. (See *Reliable Enterprises, Inc.* v. *Superior Court, supra*, 158 Cal.App.3d at p. 619.)

 "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. [Citations.]" (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]; *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr 235, 543 P.2d 603].) The procedure employed by the court in this case placed petitioner in the position of learning the facts in support of the charge at the very moment he was required to defend against it. The adjudication of contempt was, therefore, an act in excess of jurisdiction. (See *In re Hess, supra*, at p. 175.)

In light of this conclusion it is unnecessary to discuss at length petitioner's contention that there was no evidence that the court ordered petitioner not to communicate with a juror. Suffice it to say that a strict construction of the evidence in favor of petitioner supports this contention, and provides an additional reason in support of our conclusion that the trial court's òrder is void. (See *Mitchell* v. *Superior Court* (1989) 49 Cal.3d 1230, 1256 [265 Cal.Rptr. 144, 783 P.2d 731].)

We need not and do not address petitioner's final contention that the sentence imposed upon him violated the constitutional prohibition against cruel and unusual punishment.

The municipal court is ordered to vacate the judgment of contempt entered against petitioner in this case, and to enter a new and different judgment acquitting the petitioner of contempt. The temporary stay order issued by this court on January 16, 1991, shall remain in effect until this decision becomes final as to this court.

George, J., concurred.

**GOERTZEN, J.,** Concurring and Dissenting.—I concur in the majority's result but not in their citation of one authority nor in their decision to publish.

This case, simply put, involves the failure of the trial court judge to initiate an indirect contempt proceeding with an affidavit setting forth the

facts on which the contempt charge is based as required by Code of Civil Procedure section 1211.

I agree with the majority that the affidavit is mandatory under the language of Code of Civil Procedure section 1211. I do not agree with the majority's reliance on the case of *Ryan v. Commission on Judicial Performance* (1988) 45 Cal.3d 518 [247 Cal.Rptr. 378, 754 P.2d 724, 76 A.L.R.4th 951]. That case involved the disciplining of a judge who, among other things, found a party guilty of contempt based on unsworn testimony in chambers and without any affidavit. In our case, the trial judge had a hearing in open court with the witnesses to the alleged contempt present. While those witnesses were originally unsworn, the trial judge corrected this later by having said witnesses sworn and asking them under oath to affirm their earlier testimony, which both witnesses did. In fact, one of the witnesses, who was a juror, felt he was still under the oath he took when sworn as a juror.

As indicated, I agree with the majority that the absence of the required affidavit is fatal to the contempt proceedings in this case; but to rely on the *Ryan* case, *supra*, is not necessary and carries an unwarranted inference as to the scope of the trial judge's error in this case. The trial judge had a defendant who one day was twenty-five minutes late, and who, the next day, made a comment to a juror notwithstanding the trial court's clear instructions that such communications were not to be had. The trial judge felt that in affording a hearing where the witnesses made statements and were subject to cross-examination, and the defendant was afforded an opportunity to present evidence as to the alleged contemptuous communication, he had substantially complied with Code of Civil Procedure section 1211.

Certainly, the trial judge in our case acted in good faith. His conduct in no way merits comparison to the manner in which the trial judge in *Ryan v. Commission on Judicial Performance* conducted his contempt matter. Furthermore, this case clearly fails to meet any criteria warranting its publication pursuant to California Rules of Court, rule 976.