[No. B142777. Second Dist., Div. Five. Dec. 19, 2000.]

In re ARTIS IVEY on Habeas Corpus.

Leonard J. Meyberg, Jr., for Petitioner.

No appearance for Respondent Superior Court.

No appearance for Real Party in Interest.

**OPINION**

**GRIGNON, Acting P. J.**—In a child custody and support proceeding, a father was found to be in contempt of orders to pay the mother's pendente lite attorney and expert fees. He filed a petition for writ of habeas corpus, contending the family law court had improperly utilized mandatory presumptions, relating to the elements of knowledge and ability to pay, to find him guilty of criminal contempt. We conclude that, where ability to pay has already been determined by the family law court in making the order underlying the contempt, ability to pay is not an element of the contempt,

but rather inability to pay is an affirmative defense. We further conclude the instant contempt proceeding is criminal in nature, and while a mandatory presumption may not be utilized to find an individual guilty of criminal contempt, a permissive inference may be utilized. Because the family law court properly utilized a permissive inference of knowledge in determining guilt, we deny the petition for writ of habeas corpus.

## FACTS AND PROCEDURAL BACKGROUND

Petitioner Artis Ivey (father) and real party in interest Shelita Washington (mother) are the parents of three children. The parties have never been married. The instant litigation concerns the custody and support of the three children. While the parties were preparing for trial, mother sought pendente lite awards of attorney and expert fees based on her needs and father's ability to pay. Father was, by his own admission, an extraordinarily high income earner. On September 10, 1997, father was ordered to pay $2,898 in attorney fees and costs, payable on November 10, 1997. Father's attorney was present in court when the family law court made the order, but father was not present. A formal order was prepared and served on father's attorney on December 4, 1997. The order was filed with the court on December 24, 1997.

On November 19, 1997, father was ordered to pay a total of $83,265 in attorney and expert fees, payable in six installments due November 19, 1997, December 19, 1997 (two installments), January 19, 1998 (two installments), and the date of trial, February 26, 1998. Father's attorney was present in court when the family law court made the order, but father was not present. A formal order was prepared and served on father's attorney on December 8, 1997. The order was filed with the court on December 24, 1997. When the trial date was continued, the February 26, 1998 installment was extended to April 17, 1998.

Father made no payments on the orders. Mother levied on father's bank account and obtained $16,920 towards payment of the orders. Father was personally served with the orders on January 8, 1999. Father still made no payments on the orders.

On October 7, 1999, mother filed an affidavit alleging seven counts of contempt of court for failure to pay the seven court-ordered attorney and expert fee installments. An order to show cause issued on the affidavit, directing father to show cause why he should not be held in criminal

contempt. After being served with the order to show cause, father made five payments of $500 towards payment of the installments.

A hearing on the order to show cause was held. Mother's proffered evidence of father's bank statements was excluded for failure to comply with the foundational requirements for the business records exception to the hearsay rule. Father presented no evidence, but moved to dismiss the contempt citation on the ground of insufficiency of the evidence to support findings of knowledge and ability to pay. The family law court found notice to father's attorney was properly imputed to father and ability to pay was established by the determination of ability to pay made when the orders initially issued. The family law court denied the motion to dismiss and found father guilty of seven counts of contempt. The family law court sentenced father to 14 days in jail (two days for each count), and suspended all but three days on condition of future compliance.

Father petitioned this court for a writ of habeas corpus. We issued an order to show cause, stayed execution of the sentence pending determination of the merits of the petition, and set the matter for oral argument. No appearance was made by respondent court or mother.

## DISCUSSION

### Ability to Pay

Father contends present ability to pay is an element of the contempt charged against him. He contends mother failed to produce any evidence of his present ability to pay and the family law court utilized an unconstitutional mandatory presumption of ability to pay based on an earlier finding of ability to pay made at the time the underlying orders were entered. We reject these contentions.

As a general rule, the elements of contempt include (1) a valid order, (2) knowledge of the order, (3) ability to comply with the order, and (4) willful failure to comply with the order. (*Anderson v. Superior Court* (1998) 68 Cal.App.4th 1240, 1245 [80 Cal.Rptr.2d 891]; *In re Cassil* (1995) 37 Cal.App.4th 1081, 1087 [44 Cal.Rptr.2d 267].) However, where the order is a family law order for payment of support or attorney fees, and the family law court has already determined the alleged contemner's ability to pay the underlying order, ability to comply with the order is not an element of the contempt. Rather, inability to pay is an affirmative defense, which must be

proven by the alleged contemner. (*In re McCarty* (1908) 154 Cal. 534, 538 [98 P. 540].) Ability to pay becomes an element of the contempt only when the alleged contempt occurs many years after the underlying order. (*Mery v. Superior Court* (1937) 9 Cal.2d 379, 380-381 [70 P.2d 932].)

The rationale of such a rule is clear. "It is not necessary for a wife on the hearing of a contempt proceeding for nonpayment of alimony to prove anything more than the making of the order and disobedience of it by her husband in refusing to pay the amounts which the court found he had the ability to [pay] when it made the order. She makes a *prima facie* case at the hearing by producing the original order, and by proof of the refusal of her husband to make payment according to its terms . . . . The proceeding in contempt is designed to punish the delinquent husband for disobeying the order of the court and to enforce obedience to it, and at the same time an opportunity is given him to purge himself of contempt by presenting any legitimate excuse he may have, and[,] if his excuse is that since the making of the original order he has become unable to pay the alimony required by it, it is incumbent upon him to prove that fact. He is in the best position to show why for any reason he has not obeyed the order, and it is his duty to do so as a matter of defense. It is not necessary for the wife to allege his ability to comply with the original order. The court had originally found that he had such ability . . . ." (*In re McCarty, supra,* 154 Cal. at p. 537.) The rationale supports the rule where the alleged contempt occurs soon after the underlying order was entered. (*Mery v. Superior Court, supra,* 9 Cal.2d p. 380.) The rationale does not support the rule where the alleged contempt occurs long after the underlying order was entered. (*Ibid.* [ongoing spousal support; contempt alleged for failure to pay amounts coming due 10 years later].)

This rule has been consistently applied by the courts of this state with one significant digression. (*In re Rasmussen* (1922) 56 Cal.App. 368, 371 [205 P. 72]; *In re Risner* (1945) 67 Cal.App.2d 806, 809-810 [155 P.2d 667]; *In re Sigesmund* (1961) 193 Cal.App.2d 219, 224 [14 Cal.Rptr. 221]; *Sorell v. Superior Court* (1967) 248 Cal.App.2d 157, 160-161 [56 Cal.Rptr. 222]; *Mossman v. Superior Court* (1972) 22 Cal.App.3d 706, 712 [99 Cal.Rptr. 638].) The digression commenced in 1954 when the Court of Appeal stated that one of the elements of contempt of an order to pay child support was ability to comply, which was required to be alleged in the affidavit and proven by the petitioner. (*Warner v. Superior Court* (1954) 126 Cal.App.2d 821, 824 [273 P.2d 89].) It is notable, however, that ability to pay was not at issue in the *Warner* case. In response to *Warner*, the Legislature adopted Code of Civil Procedure section 1209.5, which expressly provided that ability to pay was not an element of contempt of an order to pay child

support. (Revision of 1955 Code Legislation (U. of Cal. Ext. 1955) p. 129.)[1] In 1986, the Court of Appeal considered Code of Civil Procedure section 1209.5 and held that ability to pay was an element of contempt of a child support order. (*In re Feiock* (1986) 180 Cal.App.3d 649, 653-654 [225 Cal.Rptr. 748].) The appellate court further held that Code of Civil Procedure section 1209.5 created an unconstitutional mandatory presumption of ability to pay. (*Ibid.*; cf. *Martin v. Superior Court* (1971) 17 Cal.App.3d 412, 415 [95 Cal.Rptr. 110] [Code Civ. Proc., § 1209.5 is constitutional].)

The matter was taken up by the United States Supreme Court. (*Hicks v. Feiock* (1988) 485 U.S. 624 [108 S.Ct. 1423, 99 L.Ed.2d 721].) The Supreme Court stated that whether ability to comply is an element of contempt or an affirmative defense is a matter of state law, and it was not free to overturn the state court's determination. (*Id.* at p. 629 [108 S.Ct. at p. 1428]; accord, *Moss v. Superior Court* (1998) 17 Cal.4th 396, 426 [71 Cal.Rptr.2d 215, 950 P.2d 59]; cf. *In re Cassil, supra,* 37 Cal.App.4th at p. 1088, fn. 1.) In this case, the Supreme Court noted, the appellate court had determined ability to pay to be an element, and the California Supreme Court had denied review. The United States Supreme Court held that a mandatory presumption was unconstitutional in a criminal proceeding, but not in a civil proceeding. (*Hicks v. Feiock, supra,* 485 U.S. at pp. 637-638 [108 S.Ct. at pp. 1432-1433].) The Supreme Court remanded the matter to the California Court of Appeal to determine whether the contempt proceeding had been criminal or civil in nature. (*Id.* at pp. 640-641 [108 S.Ct. at pp. 1434-1435].)

On remand, the Court of Appeal held that it had improperly interpreted Code of Civil Procedure section 1209.5 in its earlier opinion. (*In re Feiock* (1989) 215 Cal.App.3d 141, 146 [263 Cal.Rptr. 437].) It now held that under Code of Civil Procedure section 1209.5, ability to pay was not an element of contempt, but rather an affirmative defense. (215 Cal.App.3d at pp. 146-148.) The appellate court noted: "For many years in California ability to pay has been considered, without much analysis, to be a matter of defense in contempt proceedings." (*Id.* at p. 146.) "Common sense dictates that the contemner raise inability to pay. The contemner is the person in the best position to know whether inability to pay is even a consideration in the proceeding and also has the best access to evidence on the issue, particularly in cases of self-employment. Considerations of policy and convenience have

---

[1]Code of Civil Procedure section 1209.5 provides: "When a court of competent jurisdiction makes an order compelling a parent to furnish support or necessary food, clothing, shelter, medical attendance, or other remedial care for his or her child, proof that the order was made, filed, and served on the parent or proof that the parent was present in court at the time the order was pronounced and proof that the parent did not comply with the order is prima facie evidence of a contempt of court."

led courts to sanction placement of the burden of establishing a defense on defendants under similar circumstances." (*Id.* at pp. 147-148, fn. omitted.)

In a slightly different context, the California Supreme Court affirmed that ability to pay is not an element of contempt of a child support order pursuant to Code of Civil Procedure section 1209.5. (*Moss v. Superior Court, supra,* 17 Cal.4th 396.) The Supreme Court held that contempt of a child support order could be based on a willful failure to seek and accept available employment commensurate with skills and ability. (*Id.* at p. 401.) The Supreme Court further held: "Ability to comply with a support order is not an element of the contempt which must be proven beyond a reasonable doubt by the petitioner. Inability to comply is an affirmative defense which must be proven by a preponderance of the evidence by the alleged contemner." (*Id.* at p. 425.) "Proof of ability to pay is not an element of a contempt based on a failure to comply with a child support order." (*Id.* at p. 426.) In broad language, the Supreme Court stated: "[A]bility to pay has traditionally been considered an affirmative defense in contempt proceedings." (*Ibid.*) "The ability of the parent to pay the amount of support ordered has been determined by the court that made the order." (*Id.* at p. 428.) "[T]he elements of this contempt are only a valid court order, the alleged contemner's knowledge of the order, and noncompliance. If the petitioner proves those elements beyond a reasonable doubt the violation is established. He or she need go no farther. To prevail on the affirmative defense of inability to comply with the support order, the contemner must prove such inability by a preponderance of the evidence."[2] (*Ibid.*)

█ It may be argued that Code of Civil Procedure section 1209.5 expressly refers only to child support orders and therefore ability to pay must be an element of other similar family law orders.[3] We are not persuaded by this argument. The law in California on this issue is long-standing and consistent, with the exception of the digression caused by *Warner v. Superior Court, supra,* 126 Cal.App.2d 821. In response to the *Warner* court's statement that ability to pay is an element of contempt of a child support order, the Legislature adopted Code of Civil Procedure section 1209.5 to specifically overturn *Warner.* Nothing suggests that the intent of the Legislature in enacting Code of Civil Procedure section 1209.5 was to abrogate the general case authority holding that ability to pay is not an element of contempt of

---

[2] In this respect, the Supreme Court disapproved *In re Feiock, supra,* 215 Cal.App.3d 141, which held that, once the alleged contemner had raised the issue of ability to pay, the petitioner was required to prove ability to pay beyond a reasonable doubt.

[3] We express no opinion as to whether a pendente lite attorney fee order in a child support proceeding is in the nature of a child support order and thus falls within the confines of Code of Civil Procedure section 1209.5.

family law orders in which ability to pay has already been determined. Moreover, the rule of law has been expressly articulated in two California Supreme Court cases, *In re McCarty, supra,* 154 Cal. 534 and *Mery v. Superior Court, supra,* 9 Cal.2d 379. These cases have not been overturned or disparaged by subsequent Supreme Court cases. (Cf. *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1256 [265 Cal.Rptr. 144, 783 P.2d 731] [ability to comply with an injunction an element of the contempt].) Indeed, *In re McCarty* was cited with approval in *Moss v. Superior Court, supra,* 17 Cal.4th at page 426, and the holding of *McCarty* was supported by the broad language of *Moss* relegating inability to pay in family law contempt proceedings to an affirmative defense. (*Ibid.*) Nor, as discussed above, have the cases been overruled by the United States Supreme Court or abrogated by the Legislature. This court is bound by decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

     In this case, father was ordered to make certain payments by certain dates. The underlying orders necessarily included an implied determination of ability to pay.[4] Father did not pay the installments when ordered. Thus, at the time the installments came due, father was in contempt of court. (*Sorell v. Superior Court, supra,* 248 Cal.App.2d at p. 163.) The underlying orders were made in September and November 1997, and were payable between November 1997 and April 1998. Therefore, the failure to pay constituting the contempt occurred shortly after the determination of ability to pay had been made. We conclude ability to pay was not an element of the contempt charged against father. Accordingly, mother was not required to prove it.[5] Father presented no evidence of the affirmative defense. Thus, the contempt may not be annulled on this ground.

*Knowledge or Notice*

     ·Father contends the family law court utilized an unconstitutional mandatory presumption that he had knowledge of the relevant orders in finding him guilty of contempt. We disagree. While the use of a mandatory presumption is unconstitutional in a criminal contempt proceeding, permissive inferences are a recognized evidentiary device properly used in criminal contempt proceedings. Because the family law court's finding of knowledge was effectively a permissive inference, the finding was appropriate even though this was a criminal contempt proceeding.

---

[4]Father does not contend in this court that the fee orders were not based on ability to pay.

[5]The family law court was of the opinion ability to pay was an element of the contempt, but found it had been established by the earlier determination of ability to pay.

The propriety of employing a mandatory presumption to arrive at an evidentiary finding in a contempt proceeding depends on the type of proceeding involved: civil or criminal. ■ The distinction between civil and criminal contempt proceedings hinges on the nature of the relief to be afforded. Coercive penalties that may be avoided by compliance with the order and are designed to achieve the object of the order remain civil in nature. Punitive measures that cannot be escaped by compliance and are intended to vindicate the authority of the court take on criminal overtones, triggering the due process right to have the prosecuting party bear its full burden of proof as to each element of the crime. (*Hicks v. Feiock, supra,* 485 U.S. at pp. 631-632 [108 S.Ct. at pp. 1429-1430].) "[A] contempt is civil for federal constitutional purposes if the order of contempt ultimately entered allows the contemner to purge the contempt by performing an act completely within the contemner's control. In such circumstances . . . due process considerations . . . are inapplicable. If the contemner does not have the power to purge the contempt, the proceedings are deemed criminal." (*In re Feiock, supra,* 215 Cal.App.3d at pp. 144-145.)

■ In this case, there is nothing coercive about the three-day unstayed jail sentence imposed by the family law court. Father had no means of avoiding jail by complying with the earlier orders awarding fees and costs. Rather, father was being punished for his failure to obey those orders in the first place. Indeed, the evidence showed that he had begun to pay the awards, yet he was still sentenced to jail. In addition, the order to show cause warned father that the proceeding was criminal in nature and possible penalties included jail. Father certainly did not have the power to purge the contempt by payment. We conclude the contempt proceedings in this case were unquestionably criminal in nature. We turn next to the distinction between mandatory presumptions and permissive inferences.

The law distinguishes between mandatory presumptions and permissive inferences. "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." (Evid. Code, § 600, subd. (a).) A presumption is mandatory. A presumption may be either (1) conclusive or (2) rebuttable or disputable. (Evid. Code, § 601.) A presumption either affects the burden of producing evidence or the burden of proof. (*Ibid.*) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) Inferences are permissive. Mandatory presumptions and permissive inferences are evidentiary devices.

■ In a criminal case, an evidentiary device "is unconstitutional [if] it relieves the prosecution of its burden of proving all elements of the criminal

offense beyond a reasonable doubt." (*People v. Roder* (1983) 33 Cal.3d 491, 496-497 [189 Cal.Rptr. 501, 658 P.2d 1302].) " '[T]*he device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.* . . .' " (*Id.* at p. 497.) " '[An] entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant' " is constitutional. (*Id.* at pp. 497-498.) " '[A] mandatory presumption . . . [which] tells the trier [of fact] that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts,' " is unconstitutional. (*Id.* at p. 498.) The use of a mandatory presumption in a criminal case is unconstitutional whether the presumption is conclusive or rebuttable. (*Id.* at p. 501.) However, a mandatory presumption may be reconfigured as a permissive inference for use in a criminal case. (*Id.* at p. 505.)

We now turn to the evidentiary device imputing knowledge of an attorney to his client. "[T]he alleged contemner's notice or knowledge of the order that he is charged with violating is a jurisdictional prerequisite to the validity of a contempt order." (*Freeman v. Superior Court* (1955) 44 Cal.2d 533, 537 [282 P.2d 857].) If it appears from the record that counsel for the alleged contemner was present in court when the order for payment of attorney fees and court costs was made and counsel was thereafter served with a copy of the order, counsel's knowledge of the order may be imputed to the alleged contemner. (*Ibid.*) "The general rule of agency, that notice to or knowledge possessed by an agent is imputable to the principal, applies for certain purposes in the relation of attorney and client. [Citations.] [¶] The rule rests on the premise that the agent has acquired knowledge which it was his duty to communicate to his principal, and the presumption is that he has performed that duty." (*Id.* at pp. 537-538.)

Prior to the Supreme Court's decision in *People v. Roder, supra,* 33 Cal.3d 491, courts referred to the use of the evidentiary device in criminal cases as a "disputable presumption." (*Freeman v. Superior Court, supra,* 44 Cal.2d at p. 538; *Mossman v. Superior Court, supra,* 22 Cal.App.3d at pp. 711-712.) It is not entirely clear from the cases whether the so-called "disputable presumption" was mandatory or permissive. The terms "presumption" and "inference" were frequently used interchangeably by the courts. (See, e.g., *Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 [99 S.Ct. 2213, 2224-2226, 60 L.Ed.2d 777].) It is, however, now clear that the imputation of notice of an attorney to an alleged contemner in a criminal case may be

utilized as a permissive inference, but not as a mandatory presumption, even if it is disputable or rebuttable.

In this case, the record establishes that the family law court utilized an evidentiary device to establish notice or knowledge of the orders by father. The record is undisputed that father's counsel was present in court when the orders were made and was thereafter served with the formal orders. The family law court found that evidence of the attorney's knowledge of the orders was sufficient to establish father's knowledge. It is true that the family law court described the evidentiary device as a "disputable presumption," the phrase utilized by the *Mossman* court. The use of the term "presumption" is not dispositive, however. The real question is whether the family law court utilized a permissive inference or a mandatory presumption in making its factual determination. A careful reading of the record in this case leads to the conclusion that the family law court utilized a permissive inference when it imputed the notice of the attorney to father. The family law court was well aware of the mandatory presumption issue, and father's motion to dismiss was made on the basis of the unconstitutionality of mandatory presumptions in criminal cases and the absence of any other evidence of knowledge. Indeed, the family law court discussed at great length *Hicks v. Feiock, supra,* 485 U.S. 624, which expressly held that the use of mandatory presumptions in criminal contempt cases arising out of family law orders was unconstitutional. (*Id.* at pp. 637-638 [108 S.Ct. at pp. 1432-1433] [ability to pay].) We will presume in the absence of contrary evidence that the family law judge knew the law. (Evid. Code, § 664; cf. *People v. Roder, supra,* 33 Cal.3d at p. 503 [ambiguous jury instruction].)

The evidence established that father's counsel had been present when the orders were made and had thereafter been served with formal orders. From this evidence, it may reasonably be inferred that father's attorney informed father of the orders. Other evidence supports the inference of knowledge. After the orders were made in 1997, father did not pay. A large sum of money disappeared from father's bank account. In January 1998, father was personally served with the orders. Father still did not pay. Only after father was served with an order to show cause for criminal contempt did father begin to make payments. From this behavior, one can reasonably infer that father had knowledge of the orders at or near the time the orders were made and deliberately chose to ignore the orders until he was faced with criminal contempt proceedings. Substantial evidence supports a finding of knowledge or notice.

## DISPOSITION

The petition for writ of habeas corpus is denied. The stay order issued on August 3, 2000, is vacated.

Godoy Perez, J., and Weisman, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.