[No. B159294. Second Dist., Div. Three. Sept. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN TERROSE PINKSTON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 2. 3. 4. and 5. of the Discussion.

**COUNSEL**

Gerald M. Serlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael C. Keller and Richard S. Moskowitz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—Steven Terrose Pinkston appeals the judgment entered after conviction by jury of evading an officer with willful disregard for the safety of persons and property, a felony, and evading arrest, a misdemeanor. (Veh. Code, §§ 2800.2, subd. (a), 2800.1, subd. (a).) The trial court sentenced Pinkston to a term of 25 years to life in state prison. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Prosecution's evidence.*

The evidence introduced at trial established Pinkston's involvement in two separate instances of evading a peace officer.

#### a. *The September 14th incident.*

On September 14, 2001, at approximately 8:45 p.m., Culver City Police Officer Michael Poulin stopped a Camaro driven by Pinkston. Poulin approached the Camaro and requested Pinkston's driver's license and registration. Pinkston repeatedly asked why Poulin had stopped him. When Poulin asked Pinkston to step from the vehicle, Pinkston sped from the scene. Poulin chased Pinkston with overhead lights and siren at speeds up to 100 miles per hour but was unable to apprehend Pinkston.

Culver City Police Officer Jason Davis assisted Poulin in the pursuit of Pinkston. When Davis attempted to turn north on La Brea Avenue from Slauson Avenue, a vehicle failed to yield to Davis's red lights and siren and a traffic accident ensued in which both cars were "totaled" and the driver of the civilian vehicle was taken from the scene in an ambulance.

#### b. *The incident of October 21.*

On Sunday, October 21, 2001, at approximately 10:00 a.m., Sheriff's Deputies Pablo Partida and Dennis Parker attempted to stop Pinkston's Camaro. As Partida and Parker approached the Camaro on foot, it sped away. Partida chased Pinkston with overhead lights and siren. Pinkston went through a posted stop sign at 124th Street and Slater Avenue, continued north on Slater Avenue and then east on 123d Street at 50 to 60 miles per hour in a residential area. Pinkston ran a posted stop sign at 123d Street and Compton Avenue, continued south on Compton Avenue and increased the distance between himself and the deputies. Pinkston went through a red light at Compton Avenue and El Segundo Boulevard, ran a stop sign at 132d Street and Compton Avenue and continued at 60 miles per hour east on Stockwell

Avenue from Slater Avenue. Pinkston slowed on Stockwell Avenue because of speed bumps on the street. The convertible top of the Camaro flew open as it went over the speed bumps. Pinkston proceeded north on Grandee Avenue, failed to stop at a posted stop sign at 132d Street and Grandee Avenue and increased his speed to 60 miles per hour in a residential zone. Pinkston went through a red light at Grandee Avenue and El Segundo Boulevard and proceeded west on 127th Street to a dead end. Pinkston slowed to approximately five miles per hour and jumped from the moving Camaro a few feet before it struck a retaining wall. Pinkston was detained at gunpoint.

2. *Defense evidence.*

Pinkston presented no affirmative defense.

3. *Sentencing considerations.*

The jury convicted Pinkston of evading arrest, a misdemeanor, with respect to the September 14 incident, and convicted him of felony evading with respect to the October 21 incident. The trial court found Pinkston had a prior conviction of voluntary manslaughter in 1992 and a prior conviction of making a terrorist threat in 1998. The trial court declined to strike either prior conviction in the interests of justice and sentenced Pinkston to a term of 25 years to life in state prison.

## CONTENTIONS

Pinkston contends Vehicle Code section 2800.2 creates an unconstitutional mandatory presumption, the trial court erroneously failed to instruct the jury on unanimity, the prior conviction of making a criminal threat does not qualify as a strike, the trial court abused its discretion in denying Pinkston's motion to strike the prior convictions in the interests of justice and the term imposed constitutes cruel and unusual punishment.

## DISCUSSION

1. *Vehicle Code section 2800.2 does not create an unconstitutional mandatory presumption.*

a. *Background.*

Vehicle Code section 2800.1, set out in full at footnote 1, *post*, makes it a misdemeanor to attempt to evade a peace officer wearing a distinctive uniform and driving a distinctively marked patrol vehicle with red light and

siren activated.[1] The offense is elevated to an alternate misdemeanor felony by Vehicle Code section 2800.2, subdivision (a), if "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property . . . ." (Veh. Code, § 2800.2, subd. (a).)

Vehicle Code section 2800.2, subdivision (b), the statute in issue here, was added to section 2800.2 in 1996. It provides: "(b) For the purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [Vehicle Code] Section 12810 occur, or damage to property occurs."

Consistent with Vehicle Code section 2800.2, subdivision (b), the trial court instructed Pinkston's jury in the words of CALJIC No. 12.85 that: "A willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time the person driving commits three or more Vehicle Code violations, such as running a red light . . . , failing to stop at a posted stop sign . . . , passing a vehicle on the right by driving off the main traveled portion of the roadway . . . , driving with a suspended license . . . or damage to property. 'Willful or wanton' means an act or acts intentionally performed with a conscious disregard for the safety of persons or property. It does not necessarily include an intent to injure."

b. *Pinkston's contention.*

Pinkston contends Vehicle Code section 2800.2, subdivision (b) constitutes a constitutionally prohibited mandatory presumption which told the jury the element of willful or wanton disregard for the safety of persons or property existed if the basic fact of three Vehicle Code violations or property damage was present. Pinkston argues the instruction reduced the prosecution's burden of proof.

Pinkston claims the error requires reversal because the jury sent the trial court a note, shortly after deliberations commenced, which asked whether

---

[1] Vehicle Code section 2800.1 provides: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist: [¶] 1. The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] 2. The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] 3. The peace officer's motor vehicle is distinctively marked. [¶] 4. The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform."

violation of three or more of the enumerated Vehicle Codes sections constitutes willful or wanton disregard for the safety of others "in and of itself?" The trial court responded affirmatively.

Pinkston further claims there was insufficient evidence of willful or wanton disregard absent the presumption. Pinkston argues the felony pursuit occurred on a Sunday in a residential area where traffic was light. Pinkston never came close to striking any other vehicle, he never caused any other vehicle to stop, brake hard or take evasive action to avoid a collision, the risk of danger was reduced by the lights and siren of the pursuing deputies which alerted others to the approach of Pinkston and the chase lasted only two minutes. Because Pinkston committed the required number of Vehicle Code violations in a relatively straightforward manner, the presumption found in subdivision (b) of Vehicle Code section 2800.2 allowed the jury to find the element of willful or wanton disregard without conducting an independent evaluation of the evidence to determine the existence of that element. Pinkston concludes the felony evading conviction must be reversed.

### c. *Resolution.*

■ An instruction which reduces the prosecution's burden of proving every element of an offense beyond a reasonable doubt violates a defendant's right to due process. (*Sandstrom v. Montana* (1979) 442 U.S. 510, 523–524 [61 L.Ed.2d 39, 99 S.Ct. 2450]; *People v. Roder* (1983) 33 Cal.3d 491, 504 [189 Cal.Rptr. 501, 658 P.2d 1302].) "A mandatory presumption is one that tells the trier of fact that it *must* assume the existence of the elemental fact from proof of the basic fact. [Citations.] The prosecution may not rely on a mandatory presumption unless it is accurate. There must be a ' "rational connection" ' between the basic fact proved and the ultimate fact presumed [citation] and 'the fact proved [must be] sufficient to support the inference of guilt beyond a reasonable doubt.' [Citations.]" (*People v. McCall* (2002) 104 Cal.App.4th 1365, 1372 [128 Cal.Rptr.2d 917].)

■ Subdivision (b) of Vehicle Code section 2800.2 does not state a mandatory presumption. Rather, it sets out the Legislature's *definition* of what qualifies as willful and wanton conduct under subdivision (a). Although Vehicle Code section 2800.2 uses the phrase "willful or wanton disregard for the safety of persons or property" to describe an element of reckless evading, the statute defines this element so that it may be satisfied by proof of property damage or by proof that the defendant committed three Vehicle Code violations. Thus, section 2800.2, subdivision (b) establishes a rule of substantive law rather than a presumption apportioning the burden of persuasion concerning certain propositions or varying the duty of coming forward with evidence. (See *People v. Dillon* (1983) 34 Cal.3d 441, 474–475 [194 Cal.Rptr. 390, 668 P.2d 697].) In other words, evasive driving during which

the defendant commits three or more specified traffic violations *is* a violation of section 2800.2 *"because of the substantive statutory definition of the crime"* rather than because of any presumption. (*People v. Dillon, supra,* at p. 475.) Since there is no presumption, due process is not violated. (*Id.* at p. 476.)

This statutory scheme is similar to that found by our Supreme Court to be definitional, not an improper presumption, in connection with driving under the influence statutes. Prior to 1981, former section Vehicle Code 23126 established "a presumption that a person with a blood alcohol level of 0.10 or more was under the influence of alcohol." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 264 [198 Cal.Rptr. 145, 673 P.2d 732].) In 1981, the Legislature enacted a new driving under the influence statute, section 23152, subdivision (b), which provided: " 'It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. [¶] For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood.' " (*Burg v. Municipal Court, supra,* at p. 264.) Addressing a challenge to the new statute, the Supreme Court concluded: "[S]ection 23152, subdivision (b), does not create a conclusive presumption of intoxication, nor does it 'eliminate[] the prosecutor's burden of proof when the accused is found to have [0.10] percent, by weight, of alcohol in [his] blood.' Instead, the statute defines, in precise terms, the conduct proscribed. . . . [¶] Although under section 23152, subdivision (b), it is no longer necessary to prove that the defendant was in fact under influence, the People still must prove beyond a reasonable doubt that at the time he was driving his blood alcohol exceeded 0.10 percent." (*Id.* at p. 265, fns. omitted.)

More recently, the court in *People v. Bransford* (1994) 8 Cal.4th 885 [35 Cal.Rptr.2d 613, 884 P.2d 70], addressed the current version of Vehicle Code section 23152, which prohibits driving with a blood-alcohol level of 0.08 percent, and rejected the same argument: "[W]e hold as we did in *Burg* . . . that section 23152(b) defined a particular type of prescribed conduct: it set forth an alternative definition of the offense of driving with a prohibited blood-alcohol concentration, i.e., driving with 0.08 percent or more of blood alcohol as defined by grams of alcohol in 210 liters of breath." (*People v. Bransford, supra,* 8 Cal.4th at p. 892, fn. omitted.) It further held the statute "did not presume that the driver was intoxicated or 'under the influence'; instead, it defined the substantive offense of driving with a specific concentration of alcohol in the body. Thus, it did not create an irrebuttable conclusive presumption." (*Id.* at pp. 892–893.)

■ Under Vehicle Code section 2800.1, the prosecutor must prove that the defendant was willfully fleeing from a peace officer under the circumstances described in that section. To support a conviction under section

2800.2, subdivision (b), the People need only additionally prove that the defendant committed at least three violations of the Vehicle Code or property damage during such flight that is sufficient to establish the offense defined by subdivision (b). There is no improper presumption involved.

The legislative history of the amendment that added subdivision (b) to Vehicle Code section 2800.2 confirms this conclusion. The Legislative Counsel's Digest states: "This bill would . . . *describe* acts that constitute driving in a willful or wanton disregard for the safety of persons or property." (Stats. 1996, ch. 420, italics added.)

Also instructive is the following analysis of the amendment: "This bill would define 'a willful or wanton disregard for the safety of persons or property' as behavior that includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count occur or damage to property occurs." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1999 (1995–1996 Reg. Sess.) as amended July 7, 1996, p. 2.)

The conclusion that the amendment is definitional is also supported by the reasoning of *People v. Sewell* (2000) 80 Cal.App.4th 690 [95 Cal.Rptr.2d 600]. *Sewell* addressed whether Vehicle Code section 2800.2, as amended in 1996 to permit a finding of willful or wanton disregard based on three Vehicle Code violations, continued to constitute an inherently dangerous felony for purposes of second degree murder. *Sewell* observed: "The 1996 amendment did not change the elements of the section 2800.2 offense, in the abstract, or its inherently dangerous nature. The amendment merely *described a couple of nonexclusive acts* that constitute driving with willful or wanton disregard for the safety of persons or property." (*People v. Sewell, supra,* at pp. 694–695, italics added.)

Based on the foregoing, we conclude Vehicle Code section 2800.2, subdivision (b), does not state a mandatory presumption. Rather, it merely defines, in precise terms, one way in which the People may prove the element of willful or wanton disregard for the safety of persons or property. CALJIC No. 12.85 correctly repeated the statutory definition. Thus, neither the Vehicle Code section 2800.2 nor CALJIC No. 12.85 relieved the People of the burden of proving each element of the charged offense beyond a reasonable doubt, and the trial court properly instructed the jury.

2.–5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 387.

## DISPOSITION

The judgment is affirmed.

Aldrich, J., concurred.

**KLEIN, P. J.,** Dissenting.—I respectfully dissent from that portion of the majority's opinion that finds Vehicle Code section 2800.2 does not create an unconstitutional mandatory presumption.[1]

A violation of section 2800.2, subdivision (a), requires proof the defendant was fleeing or attempting to elude a pursuing peace officer in violation of section 2800.1 and that "the pursued vehicle [was] driven in a willful or wanton disregard for the safety of persons or property . . . ."[2]

Willful or wanton disregard for the safety of persons or property, a phrase that also appears in the definition of reckless driving in violation of section 23103, subdivision (a), requires more than negligence or even gross negligence. Willful or wanton disregard means "consciousness of the results with intent to omit or do an act, realizing the probable injury to another; or acting in reckless disregard of the consequences; or conduct exhibiting reckless indifference as to the probable consequences with knowledge of the likely resulting injury." (*People v. Allison* (1951) 101 Cal.App.2dSupp. 932, 934 [226 P.2d 85]; see also *People v. Dellinger* (1989) 49 Cal.3d 1212, 1220 [264 Cal.Rptr. 841, 783 P.2d 200]; *People v. Dewey* (1996) 42 Cal.App.4th 216, 221 [49 Cal.Rptr.2d 537]; *People v. Richie* (1994) 28 Cal.App.4th 1347 [34 Cal.Rptr.2d 200]; *People v. Schumacher* (1961) 194 Cal.App.2d 335, 340 [14 Cal.Rptr. 924]; *People v. McNutt* (1940) 40 Cal.App.2dSupp. 835, 837–838 [105 P.2d 657].)

However, section 2800.2, subdivision (b), added to section 2800.2 in 1996, permits the People to demonstrate willful or wanton disregard for the safety of persons or property based solely on the commission of three Vehicle Code violations or property damage during a pursuit.[3]

---

[1] Subsequent unspecified statutory references are to the Vehicle Code.

[2] Section 2800.1, subdivision (a) provides: "(a) Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor if all of the following conditions exist: [¶] (1). The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2). The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3). The peace officer's motor vehicle is distinctively marked. [¶] (4). The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform."

[3] Section 2800.2, subdivision (b), provides: "(b) For the purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving

I agree with Pinkston's contention that subdivision (b) of section 2800.2 violates due process by reducing the People's burden of proof with respect to the element of willful or wanton disregard for the safety of persons or property.

*People v. Roder* (1983) 33 Cal.3d 491, 498 [189 Cal.Rptr. 501, 658 P.2d 1302], defined a mandatory presumption as one which "tells the trier of fact that it *must* assume the existence of the ultimate, elemental fact from proof of specific, designated basic facts . . . ." A conclusive mandatory presumption "removes the presumed element from the case once the State has proved the predicate facts giving rise to the presumption." (*Francis v. Franklin* (1985) 471 U.S. 307, 314, fn. 2 [85 L.Ed.2d 344, 105 S.Ct. 1965].) *Roder* noted a mandatory presumption "limits the jury's freedom independently to assess all of the prosecution's evidence in order to determine whether the facts of the particular case establish guilt beyond a reasonable doubt." (*People v. Roder, supra,* at p. 498.) Therefore, the prosecution may not rest its case on a mandatory presumption unless "the basic fact proved *compels* the inference of guilt beyond a reasonable doubt." (*Ibid.,* fn. 7; *In re Ivey* (2000) 85 Cal.App.4th 793, 803–804 [102 Cal.Rptr.2d 447]; *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 142–143 [89 Cal.Rptr.2d 28]; *People v. Reyes Martinez* (1993) 14 Cal.App.4th 1412, 1416 [18 Cal.Rptr.2d 300].)

*People v. Roder, supra,* 33 Cal.3d at pages 500–501, struck down as unconstitutional a statutory presumption that a defendant knows property is stolen when he receives it without inquiry under circumstances which should cause a reasonable person to inquire to ascertain the right of the transferor to the property. *Carella v. California* (1989) 491 U.S. 263, 265 [105 L.Ed.2d 218, 109 S.Ct. 2419] found unconstitutional a presumption that if a rental car was not returned within five days after expiration of the rental agreement, the defendant embezzled the vehicle.

The presumption in issue here is closely analogous to the presumptions addressed in *Roder* and *Carella.* The basic facts the prosecution must prove to bring the presumption into play—three Vehicle Code violations or damage to property—do not on their face establish beyond a reasonable doubt that the defendant acted with conscious disregard for the safety of persons or property during the pursuit. Obviously, a defendant may commit three Vehicle Code violations or cause property damage during a pursuit while exercising extreme vigilance for the safety of persons or property. Thus, the presumption allowed the People to establish the elemental fact of willful or wanton disregard, a relatively complex mental state, based on three Vehicle Code

---

while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [Vehicle Code] Section 12810 occur, or damage to property occurs."

violations or property damage even though the driving may, in fact, not have been reckless and the conduct, viewed in its entirety as it would have been absent the presumption, did not establish recklessness to the jury's satisfaction.

The majority insists section 2800.2, subdivision (b) merely defines with precision one type of conduct that qualifies as willful or wanton disregard for the safety of persons or property as that phrase is used in Vehicle Code section 2800.2. However, this assessment overlooks the fact that section 2800.2, subdivision (b), permits the People to prove conscious disregard for the safety of persons or property based on the commission of three or more Vehicle Code violations or the occurrence of property damage. This goes beyond mere definition and constitutes a classic example of a "mandatory presumption" because it "tells the trier [of fact] that [it] *must* find the elemental fact upon proof of the basic fact . . . ." (*Ulster County Court v. Allen* (1979) 442 U.S. 140, 157 [60 L.Ed.2d 777, 99 S.Ct. 2213].)

The majority's analogy to section 23152, subdivision (b), which prohibits driving with a blood-alcohol content of 0.08 or greater is not persuasive. *People v. Bransford* (1994) 8 Cal.4th 885 [35 Cal.Rptr.2d 613, 884 P.2d 70], held section 23152, subdivision (b) did "not presume that the driver was intoxicated or 'under the influence'; instead, it defined the substantive offense of driving with a specified concentration of alcohol in the body. Thus, it did not create an irrebuttable conclusive presumption." (*People v. Bransford, supra,* at pp. 892–893.)

As *Bransford* found, section 23152, subdivision (b) does not direct the jury to presume intoxication upon a finding the defendant had a 0.08 blood-alcohol level. Rather, section 23152, subdivision (b) defines an offense separate from driving under the influence of alcohol or drugs, namely, driving with a blood-alcohol content of 0.08 or greater. Driving under the influence of alcohol or drugs continues to be proscribed by section 23152, subdivision (a). Thus, the two statutes, although related, address different conduct.

Similarly, the Legislature could have defined an aggravated form of evading an officer which required proof the defendant committed three Vehicle Code violations or caused property damage during the pursuit. However, it did not. Instead, it enacted section 2800.2, subdivision (b), which requires the jury to presume the existence of willful or wanton disregard, an element of section 2800.2, subdivision (a), based on proof of the basic fact of three Vehicle Code violations or property damage. This amendment did not define a new crime. Rather, it reduced the quantum of evidence the People are required to produce in order to obtain a conviction of a violation of section 2800.2, subdivision (a). This, as previously noted, constitutes a classic example of a mandatory presumption.

The legislative history of subdivision (b) to section 2800.2 does not assist the majority's position. The Legislative Counsel's Digest refers to the amendment as merely describing "acts that constitute driving in a willful or wanton disregard for the safety of persons or property." (Stats. 1996, ch. 420, italics added.) This legislative history was relied on by *People v. Sewell* (2000) 80 Cal.App.4th 690 [95 Cal.Rptr.2d 600], which concluded that section 2800.2, as amended in 1996 to permit a finding of willful or wanton disregard based on three Vehicle Code violations or property damage, continued to constitute an inherently dangerous felony for purposes of second degree murder.[4] *Sewell* observed: "The [1996] amendment merely described a couple of nonexclusive acts that constitute driving with willful or wanton disregard for the safety of persons or property." (*People v. Sewell, supra,* at pp. 694–695.) Notwithstanding the description of the amendment in its legislative history, the actual effect of the amendment is an unconstitutional reduction in the People's burden of proving the willful or wanton disregard element of section 2800.2, subdivision (a). Thus, the amendment goes beyond mere definition and, on its face, constitutes an unconstitutional mandatory presumption that lightened the People's burden of proof.

The question remains whether the unconstitutional conclusive presumption was harmless in this case under the test defined in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. I cannot conclude it was.

Shortly after jury deliberations commenced, the jury asked the trial court if Pinkston's commission of three Vehicle Code violations satisfied the requirement that the People prove willful or wanton disregard for the safety of persons or property "in and of itself?" Consistent with section 2800.2, subdivision (b), the trial court answered "yes." Also, as Pinkston repeatedly points out, neither officer testified Pinkston ever came close to striking any other vehicle; he never caused any other vehicle to stop, brake hard or take evasive action to avoid a collision; and the chase lasted only two minutes. Finally, the jury convicted Pinkston only of misdemeanor evading with respect to the pursuit of September 14. Based on all of these factors, it follows that, absent the presumption, the jury might have convicted Pinkston only of a misdemeanor with respect to the pursuit of October 21. Accordingly, I cannot find beyond a reasonable doubt the mandatory presumption contained in section 2800.2, subdivision (b), did not contribute to the verdict of guilt.

I would reverse the felony conviction in count 2.

Appellant's petition for review by the Supreme Court was denied December 17, 2003.

---

[4] Review has been granted in *People v. Howard* (S108353), September, 11, 2002, to address, inter alia, the same issue addressed in *Sewell*, whether a violation of section 2800.2 is a felony inherently dangerous to human life for purposes of the second degree felony-murder rule.