Filed 10/1/20  P. v. Romero CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> MARCO ROMERO, <br><br>     Defendant and Appellant. | B301540 <br><br> Los Angeles County <br> Super. Ct. No. KA118993 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge. Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Attorney General, David. E. Madeo and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted appellant and defendant Marco Romero of fleeing a pursuing peace officer's motor vehicle while driving recklessly, and driving with a suspended or revoked license. Romero admitted he sustained a prior strike conviction, and the trial court sentenced him to six years in state prison. On appeal, Romero raises four arguments: (1) the trial court prejudicially erred by providing an incorrect response to a jury question; (2) the court prejudicially violated due process by instructing the jury using an impermissible mandatory presumption; (3) the court erred under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 by imposing assessments and a restitution fine without determining Romero's ability to pay; and (4) the court violated its duty to consider a limited probation report when determining the amount of the restitution fine. We affirm.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Romero with fleeing a pursuing peace officer's motor vehicle while driving recklessly (Veh. Code, § 2800.2; count one)[1] and driving with a suspended or revoked license (§ 14601.1, subd. (a); count two). The information further alleged Romero sustained one prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and six prior prison term convictions (Pen. Code, § 667.5, subd. (b)).

The jury found Romero guilty on both counts. Romero admitted the strike prior and two of the six alleged prison priors.

---

[1]     All undesignated statutory references are to the Vehicle Code.

The trial court sentenced Romero to six years in state prison, consisting of an upper term on count one, doubled to six years for the prior strike. The court dismissed count two, struck the two prison prior enhancements Romero admitted, and struck the remaining four prison prior enhancements in the interest of justice under Penal Code section 1385.

Romero timely appealed.

## FACTUAL BACKGROUND

On September 2, 2018, at about 5:00 p.m., Romero was driving a pickup truck in Pomona without a front license plate. Pomona Police Officers Sacca and O'Mahony, who were driving an unmarked police car, activated their lights and sirens and attempted to stop Romero. Romero drove a short distance then pulled over to the curb. A woman exited Romero's car from the passenger door, Romero drove away, and the officers gave chase.

Officer Gomez joined the pursuit. During the pursuit, Gomez was wearing his uniform and driving a marked police car with his lights and sirens activated. Officer Hernandez, who was also driving a marked police car with his lights and sirens activated, joined the pursuit as well. Several other marked patrol cars also joined the pursuit.

During the chase, Romero committed numerous traffic violations. He sped while driving on the freeway and in residential and business districts, ran through red lights without stopping, made unsafe lane changes without signaling, drove off the road, and unsafely passed other cars on the right. The chase ended when Officer Joseph Davila performed a Pursuit

3

Intervention Technique (PIT) maneuver on Romero's truck. Officer Davila took Romero into custody.

Officer Sacca spoke to Romero at the Pomona city jail after advising him of his *Miranda*[2] rights. Romero admitted he knew he was being pursued by the police and stated he did not pull over because he did not want to go to jail.[3] He said his plan was to drive until he ran out of gas.

The defense presented no evidence.

## DISCUSSION

### I.  Romero's argument concerning the jury question

Romero first argues the trial court prejudicially erred in violation of his constitutional rights by inadequately responding to the jury's mid-deliberation request for a definition of willful or wanton disregard for the safety of persons or property. The Attorney General argues Romero has forfeited the argument because defense counsel's position below was to resubmit CALJIC No. 12.85 to the jury rather than further define willful and wanton disregard. The Attorney General further argues that, even assuming Romero had not forfeited the argument, the court's answer was not an abuse of discretion and did not prejudice Romero. We agree with the Attorney General. Romero has forfeited his argument, and even assuming he had not forfeited the argument, we find no error or prejudice.

---

[2]  *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d. 694].)

[3]  Romero was not licensed to drive on September 2, 2018. His driver's license had been suspended since February 11, 2000, and he had been notified of the suspension.

4

## A. Procedural background

Using CALJIC No. 12.85, the trial court instructed the jury on both felony reckless evading (§ 2800.2, subd. (a)) and the lesser included offense of misdemeanor evading (§ 2800.1, subd. (a)). The court stated to the jury: "Every person who flees or attempts to elude a pursuing peace officer in violation of Vehicle Code Section 2800.1, subdivision (a) and drives the pursued vehicle in a willful or wanton disregard for the safety of person or property is guilty of a violation of Vehicle Code Section 2800.2, subdivision (a), a felony." (See CALJIC No. 12.85) The court then defined the term "willful or wanton disregard for the safety of persons or property" with greater specificity. It explained: "A willful or wanton disregard for the safety of persons or property also includes, but is not limited to driving while fleeing or attempting to elude a pursuing peace officer, during which time the person driving commits three or more motor vehicle violations, such as violation of Vehicle Code Section 21755(a), passing on the right; 21453, failure to stop for a red light; 22350; speeding; 22349, exceeding the maximum 65 miles an hour; 22107, unsafe turn; 22450 failure to stop for a stop sign." (See CALJIC No. 12.85.) The court further explained: "Willful or wanton also means act or acts intentionally performed with a conscious disregard for safety of persons or property. It does not necessarily include an intent to injure." (See *ibid.*) Next, still using CALJIC No. 12.85, the court instructed the jury on the elements of a section 2800.2, subdivision (a) violation, which included the following element: "the driver of the pursued vehicle

5

drove the vehicle in a willful or wanton disregard for the safety of persons [or] property."[4]

During deliberations, the jury submitted the following question: "Please provide clarification on the definition or what constitutes [element] #8 'The driver of the pursued vehicle drove the vehicle in a willful or wanton disregard for the safety of persons or property.'"

The trial court conferred with the parties regarding the jury question. Defense counsel proposed the court simply refer the jury back to CALJIC No. 12.85 in its entirety. The prosecution proposed the court respond by focusing the jury on the definition of willful and wanton disregard as committing three or more traffic violations. Defense counsel argued that highlighting only one of the two definitions in CALJIC No. 12.85 would be improper, particularly because the prosecution had argued Romero acted with a willful or wanton disregard based on

---

[4] The full list of elements is as follows: "1. A person, while operating a motor vehicle willfully fled or otherwise attempted to elude a pursuing peace officer; [¶] 2. The person did so with the specific intent to evade the pursuing peace officer; [¶] 3. The peace officer's vehicle exhibited at least one lighted red lamp visible from the front; [¶] 4. The person saw or reasonably should have seen the red lamp; [¶] 5. The peace officer's motor vehicle sounded a siren as reasonably necessary; [¶] 6. The peace officer's motor vehicle was distinctively marked; [¶] 7. The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and [¶] 8. The driver of the pursued vehicle drove the vehicle in willful or wanton disregard for the safety of persons and property." (CALJIC 12.85.)

6

both theories.[5] The prosecution offered a compromise with defense counsel's position, proposing the court answer the question by excerpting both definitions. Defense counsel objected to the proposed compromise, noting the prosecution's wording of the second definition was slightly different than how it was worded in CALJIC No. 12.85. The court explained that the different wording was the clearest way to respond to the jury, and the proposed compromise was still a correct statement of law. Over defense counsel's objection, the court opted to use the prosecution's proposed compromise. The court provided the jury with the following answer: "Willful and wanton disregard for the safety of persons or property includes: [¶] 1. Driving while fleeing or attempting to elude a peace officer during which time the person driving commits three or more Vehicle Code violations, such as: speeding in violation of Vehicle Code section 22350, exceeding 65 mph on a highway in violation of Vehicle Code section 22349, passing on the right in violation of Vehicle Code section 21755, unsafe turning movements in violation of Vehicle Code section 22107, failing to stop at a stop sign in violation of Vehicle Code section 22450, or failing to stop for a red light in violation of Vehicle Code section 21453; [¶] OR [¶] 2. Driving in any other manner that amounts to willful or wanton disregard for the safety of persons or property. [¶] See 12.85."

---

[5] The other definition to which defense counsel was referring was the language in CALJIC 12.85 stating: "'Willful or wanton' [also] means act or acts intentionally performed with a conscious disregard for safety of persons or property. It does not necessarily include an intent to injure."

7

## B. Applicable legal principles

"When a jury asks a question after retiring for deliberation, '[s]ection 1138 imposes upon the court a duty to provide the jury with information the jury desires on points of law.' [Citation.]" (*People v. Eid* (2010) 187 Cal.App.4th 859, 881-882.) "This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]" (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardslee*).) "Indeed, comments diverging from the standard are often risky. [Citation.]" (*Ibid.*) "But a court must do more than figuratively throw up its hands and tell the jury it cannot help. It must at least consider how it can best aid the jury. It should decide as to each jury question whether further explanation is desirable, or whether it should merely reiterate the instructions already given." (*Ibid.*, italics omitted.) We review potential errors under Penal Code section 1138 for abuse of discretion. (*People v. Hodges* (2013) 213 Cal.App.4th 531, 539 (*Hodges*).)

## C. Romero's argument is forfeited

We first decide whether Romero has forfeited the argument by failing to object below with sufficient specificity. We conclude he has. Whereas Romero argued below that the trial court should refer the jury back to CALJIC No. 12.85, he now argues that the trial court's decision to direct the jury to CALJIC No. 12.85 was erroneous. "When the trial court responds to a question from a

deliberating jury with a generally correct and pertinent statement of the law, a party who believes the court's response should be modified or clarified must make a contemporaneous request to that effect; failure to object to the trial court's wording or to request clarification results in forfeiture of the claim on appeal. [Citations.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 802.) The court responded to the jury's question with a correct and pertinent statement of the law. And although Romero's counsel objected to the wording of the second theory in the answer the trial court gave the jury, the argument Romero raises on appeal is different from the basis for the objection lodged in the trial court. (See *People v. Polk* (2010) 190 Cal.App.4th 1183, 1194 [argument is forfeited if "a defendant fails to make a timely objection on the precise ground asserted on appeal . . . . [Citations.]"].)[6]

We likewise reject Romero's argument that the issue is preserved because any objection would have been futile. Because Romero did not lodge the objection, it is impossible to discern how the trial court would have reacted.

Finally, we reject Romero's contention that his argument is preserved because trial counsel was ineffective in failing to object on the grounds now raised on appeal. To prevail on an ineffective assistance claim, a defendant must establish "not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.]" (*People*

---

[6] Romero's position below was the court should answer the question by referring the jury back to CALJIC No. 12.85. This was essentially what the trial court did. It provided an answer that reiterated principles stated in CALJIC No. 12.85 and referred the jury back to that instruction.

*v. Bolin* (1998) 18 Cal.4th 297, 333.) "'[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions,' claims of ineffective assistance of counsel generally must be raised in a petition for writ of habeas corpus based on matters outside the record on appeal. [Citations.]" (*People v. Salcido* (2008) 44 Cal.4th 93, 172.) Here, we cannot conclude there was no tactical purpose for counsel's actions. Given that the record contained so much evidence of willful and wanton disregard for safety, counsel could have reasonably concluded that the shortest possible answer would provide the best tactical benefit for her client.

### D. The trial court did not abuse its discretion

Even assuming Romero had not forfeited the argument, we find no abuse of discretion. (See *Hodges*, *supra*, 213 Cal.App.4th at p. 539.) The court answered the jury's question by reiterating that "willful and wanton disregard for the safety of persons or property" refers to either (1) committing three or more Vehicle Code violations; or (2) engaging in other conduct specified in CALJIC No. 12.85. The trial court's answer was legally correct. (See *People v. Richie* (1994) 28 Cal.App.4th 1347, 1360-1362 [the terms "willful" and "wanton" do not have technical legal meanings, nor do they require clarification as arcane terminology].) The court provided the jury the clarification it requested.

We reject Romero's argument that CALJIC No. 12.85 fails to define the phrase "willful and wanton disregard." We instead conclude the definition provided in CALJIC No. 12.85 is adequate. For this reason, we also reject Romero's arguments

10

that the definition in CALJIC No. 12.85 is circular, and that the court's response was inadequate because it did not include the definition provided in CALCRIM No. 2181.[7]

We likewise reject the argument that the court knew the jury wanted a "textbook" definition of the term, but made no attempt to provide the definition it knew the jury sought. As discussed above, the court's answer was clear and correct. We similarly reject Romero's related contention that the court "acknowledged that it was punting on the jury's request for a definition" when it stated "we'll see if they respond. I'm not going to cross that bridge until I get to it." There was nothing wrong with the court's decision to provide a legally correct answer it believed was clear, then wait to see whether the jury was satisfied with the answer or requested further clarification. (See *Beardslee, supra*, 53 Cal.3d at p. 97 ["court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.]"].)

In arguing the trial court's response was erroneous, Romero relies heavily on general language from *People v. Thompkins* (1987) 195 Cal.App.3d 244 (*Thompkins*). *Thompkins* is

---

[7]     CALCRIM No. 2181 provides: "A person acts with wanton disregard for safety when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, (2) and he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage." This definition is similar to the language contained in CALJIC No. 12.85: "'Willful or wanton' means an act or acts intentionally performed with a conscious disregard for the safety of persons or property. It does not necessarily include an intent to injure."

11

inapplicable. *Thompkins* found error because the trial court's response to the jury question was legally incorrect. (*Id.* at pp. 247, 250-251.) Here the court's answer was legally correct.

We find no abuse of discretion.

## E.  Prejudice

Even assuming we were to conclude the trial court's response was erroneous, we would find no prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705 (*Chapman*) or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). As the Attorney General points out, the evidence of Romero's guilt on count one was overwhelming. Toward the start of the pursuit, on the freeway, Romero drove in excess of the speed limit (§ 22349) and made unsafe lane changes without signaling (§ 22107). On surface streets, Romero continued to drive over the speed limit on multiple occasions. (§ 22350.) He rolled through both a stop sign and a red traffic light without stopping. (§ 22450.) He made lane-change violations when he re-entered the freeway. (§ 22107.) Back on the freeway, he again drove in excess of the speed limit and made illegal lane changes. (§§ 22349, 22107.) These violations were captured on police video and played for the jury.

Romero drove approximately 52 miles per hour while fleeing police through an area with pedestrians and a nearby hospital. He cut through a parking lot at 15 to 20 miles per hour. He unlawfully turned across lanes of moving traffic when entering the freeway the second time.

Given the circumstances, any alleged error would have been harmless beyond a reasonable doubt, and it is not

reasonably probable a different answer to the jury's question would have resulted in a more favorable outcome for Romero. (See *Chapman*, *supra*, 386 U.S. at p. 24; *Watson*, *supra*, 46 Cal.2d at p. 836.) The jury could have easily and justifiably concluded Romero committed at least three Vehicle Code violations and consciously disregarded the safety of persons or property. This was not a close case.

## II. Romero's mandatory presumption argument

Romero next argues Vehicle Code section 2800.2 establishes a mandatory presumption that violates principles of due process. He further argues the trial court prejudicially erred by using CALJIC No. 12.85 because the instruction reflects the improper presumption. Romero acknowledges that five appellate opinions, including a recent opinion by this court, have rejected similar contentions – *People v. Pinkston* (2003) 112 Cal.App.4th 387, 390-394 (*Pinkston*); *People v. Williams* (2005) 130 Cal.App.4th 1440, 1445-1446 (*Williams*); *People v. Lauglin* (2006) 137 Cal.App.4th 1020, 1025 (*Laughlin*); *People v. Mutuma* (2006) 144 Cal.App.4th 635, 641, and *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1200-1207 (*Taylor*). Romero argues these cases were wrongly decided for the reasons stated in a dissenting opinion by Justice Klein in *Pinkston*, *supra*, 112 Cal.App.4th at pages 395-398. This court, in *Taylor*, addressed Justice Klein's dissent and declined to follow it. (*Taylor*, *supra*, 19 Cal.App.5th at pp. 1202-1204.) For the reasons discussed in *Taylor*, we reject Romero's contentions.

13

## A. Applicable legal principles

Section 2800.1 provides that when, with the intent to evade, the driver of a motor vehicle willfully flees or attempts to elude a pursuing peace officer's motor vehicle or bicycle under specified circumstances, the driver is guilty of a misdemeanor.[8] Subdivision (a) of section 2800.2 provides that when a person violates section 2800.1 and "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property," the person is subject to prosecution for a misdemeanor or a felony. Subdivision (b) of section 2800.2 states: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a

---

[8] Section 2800.1, subdivision (a) states: "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."

14

traffic violation point count under Section 12810 occur, or damage to property occurs."

The question presented here is whether section 2800.2 sets forth an improper mandatory presumption regarding an element of the offense established by that statute. "As our Supreme Court has explained, presumptions are not inherently impermissible in criminal proceedings; rather, they are a '"staple of our adversary system of factfinding"' because '"[i]t is often necessary for the trier of fact to determine the existence of an element of the crime — that is, an 'ultimate' or 'elemental' fact — from the existence of one or more 'evidentiary' or 'basic' facts."' (*People v. McCall* (2004) 32 Cal.4th 175, 182 . . . (*McCall*), quoting *Ulster County Court v. Allen* (1979) 442 U.S. 140, 156 [(*Ulster County*)].)" (*Taylor, supra,* 19 Cal.App.5th at p. 1200.) "A mandatory presumption tells the trier of fact that if a specified predicate fact has been proved, the trier of fact *must* find that a specified factual element of the charge has been proved, unless the defendant has come forward with evidence to rebut the presumed connection between the two facts. [Citations.]" (*Williams, supra,* 130 Cal.App.4th at pp. 1444-1445, citing *Ulster County, supra,* 442 U.S. at p. 157 and *McCall, supra,* 32 Cal.4th at p. 182.) "In the context of criminal proceedings, such a presumption contravenes due process — and thus is improper — when it relieves the prosecution of its burden of proving the elements of a crime beyond a reasonable doubt. [Citation.]" (*Taylor, supra,* 19 Cal.App.5th at p. 1200, citing *McCall, supra,* 32 Cal.4th at pp. 183-184.) A criminal statute is lawful, however, if it creates no improper mandatory presumption permitting the prosecution to establish an "elemental" fact, but merely sets forth a substantive rule of law regarding the nature of the offense. (*Taylor, supra,* 19

15

Cal.App.5th at p. 1204.) We apply de novo review when assessing whether instructions "direct a finding adverse to a defendant by removing an issue from the jury's consideration. [Citations.]" (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

## B. Section 2800.2 does not create an improper mandatory presumption

Applying the above-stated principles, we reject Romero's argument that section 2800.2 creates an improper mandatory presumption in violation of due process. In reaching this conclusion, we rely primarily on Presiding Justice Manella's opinion in *Taylor*. *Taylor* explains why the majority opinion in *Pinkston* and its progeny were correctly decided. *Taylor* also explains why the dissent in *Pinkston* was incorrect.

"In maintaining that subdivision (b) of section 2800.2 established an improper mandatory presumption, [the dissent in *Pinkston*] viewed the phrase "'willful or wanton disregard for the safety of persons or property'" as carrying the precise meaning attributed to the same phrase in section 23101, subdivision (a), which establishes the offense of reckless driving." (*Taylor*, *supra*, 19 Cal.App.5th at p. 1201, citing *Pinkston*, *supra*, 112 Cal.App.4th at p. 395 (dis. opn. of Klein, J.).) Justice Klein thus maintained that subdivision (b) of section 2800.2 created an improper mandatory presumption, reasoning that it authorized the prosecution to establish the "'relatively complex mental state'" (according to Justice Klein, the same mental state required to establish the offense of reckless driving [§ 23103, subd. (a)]) merely by demonstrating three qualifying traffic violations. (*Taylor*, *supra*, 19 Cal.App.5th at p. 1202, citing

*Pinkston, supra*, 112 Cal.App.4th at pp. 396-397 (dis. opn. of Klein, J.).) *Taylor* declined to accept Justice Klein's rationale, instead concluding "the mental state required for the reckless driving offense established in section 23103, subdivision (b)[] is not required for the section 2800.2 offense." (*Taylor, supra*, 19 Cal.App.5th at p. 1202.) In support of this conclusion, *Taylor* thoroughly analyzed the legislative history of section 2800.2, and explained that the Legislature lawfully modified the mental state requirements for the section 2800.2 offense by adding subdivision (b). (*Id.* at pp. 1202-1204.)

*Taylor* concluded: "Subdivision (b) of section 2800.2 thus creates no improper mandatory presumption permitting the prosecution to establish an 'elemental' fact — that is, the mental state required for the section 2800.2 offense — merely by showing a simple evidentiary fact — that is, the existence of three or more qualifying traffic violations. Rather, subdivision (b) reflects an exercise of the Legislature's authority to modify the statutory elements of the section 2800.2 offense. We therefore agree with the majority opinion in *Pinkston* and the courts in *Williams* and *Laughlin*, which concluded that subdivision (b) of section 2800.2 constitutes only a substantive rule of law properly within the Legislature's power to enact. [Citations.]" (*Taylor, supra*, 19 Cal.App.5th at p. 1204.)

For the reasons set forth in *Taylor*, we reject Romero's argument and decline to follow the dissent in *Pinkston*. Subdivision (b) of section 2800.2 does not contain an improper mandatory presumption. (*Taylor, supra*, 19 Cal.App.5th at pp. 1204-1205.) It merely "set[s] forth a substantive rule of law regarding the nature of the offense." (*Id.* at p. 1204.) We therefore also reject Romero's contention that the court erred in instructing

17

the jury using CALJIC 12.85, which included the substantive rule set forth in subdivision (b) of section 2800.2.

The cases upon which Romero relies are all distinguishable. In each case, the reviewing court concluded that a jury instruction or statute reflected an improper presumption that an element of the offense was established by an evidentiary fact. (*Sandstrom v. Montana* (1979) 442 U.S. 510, 512, 523-524 [99 S.Ct. 2450, 61 L.Ed. 39] [in action in which the defendant was charged with murder, it was error to instruct the jury to presume that a person intends the ordinary consequences of his voluntary acts]; *Francis v. Franklin* (1985) 471 U.S. 307, 311, 316-318 [105 S.Ct. 1965, 85 L.Ed. 344] [in action in which the defendant was charged with murder, it was error to instruct the jury regarding rebuttable presumptions that the "'acts of a person of sound mind and discretion are the product of their will,'" and that such a person intends the natural and probable consequences of his acts]; *Carella v. California* (1989) 491 U.S. 263, 264-266 [109 S.Ct. 2419, 105 L.Ed.2d 218] [in action in which defendant was charged with grand theft for failure to return a rented car, it was error to instruct the jury to presume a person embezzles a vehicle and intends to commit theft by fraud if the person fails to return the vehicle within specified time periods]; *People v. Roder* (1983) 33 Cal.3d 491, 494, 500, 503 [in action in which the defendant was charged with receiving stolen goods, it was error to instruct the jury to presume the defendant's "guilty knowledge" from his status as a secondhand dealer, possession of the stolen goods, and reasonable opportunity to confirm whether the goods were stolen, unless the jury otherwise had a reasonable doubt regarding that knowledge]; *People v. Reyes Martinez* (1993) 14 Cal.App.4th 1412, 1414-1419 [in action in which the defendant was charged with

18

kidnapping, it was error to instruct the jury that if a person moves someone 500 feet or more, this satisfies the "substantial distance" element of the offense]; *Hanna v. Riveland* (9th Cir. 1996) 87 F.3d 1034, 1035-1038 [in action in which the defendant was charged with one count of vehicular homicide and one count of vehicular assault in violation of Washington state law, both of which incorporate an element of reckless driving, it was error to instruct the jury that it may find this element based solely on the fact that the defendant drove above the speed limit].) As explained above, subdivision (b) of section 2800.2 contains no improper presumption.[9]

## III.    Romero's *Dueñas* argument

The trial court imposed a $40 court security assessment (Pen. Code, § 1465.8, subd. (a)), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $1,200 restitution fine (Pen. Code, § 1202.4, subd. (b)(1)). Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, Romero now challenges the assessments and fine on due process grounds. Romero concedes he did not object to the imposition of the assessments or fine. Romero was sentenced over eight months after *Dueñas* was decided. Romero has forfeited his *Dueñas* argument by failing to object. (See *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155.)

We also reject Romero's contention, raised in the alternative, that his counsel's failure to object constituted ineffective assistance of counsel. To establish ineffective

---

[9]    Because we find no error, we need not address prejudice.

assistance of counsel, an appellant bears the burden of showing prejudice, meaning a reasonable probability that but for the challenged act or omission of counsel, the appellant would have obtained a more favorable result. (*People v. Centeno* (2014) 60 Cal.4th 659, 674-676 (*Centeno*); see also *In re Crew* (2011) 52 Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient. [Citations.]"].) Although Romero asserts the trial court likely would have found he lacked the ability to pay the fines and assessments, he identifies no support for this assertion other than trial counsel's statement on the notice of appeal that he is indigent and his use of appointed counsel. (Cf. *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075-1076 [inability to pay costs of appointed counsel does not establish inability to pay restitution fine or other court-imposed fees].) Further, the court might have found him able to pay the fine and assessments from prison wages. (See *id.* at pp. 1075-1077 [any *Dueñas* error was harmless due to defendant's ability to earn prison wages equaling amount of fine and assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [same]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [same].) He therefore fails to satisfy his burden to show prejudice.

## IV.   Romero's restitution argument

Romero lastly argues the trial court prejudicially erred in violation of due process by not considering a limited probation report in deciding the amount of the restitution fine imposed. The Attorney General contends Romero forfeited this argument by

failing to object, and assuming the argument has not been forfeited, the error was harmless.

Penal Code section 1203, subdivision (g) imposes upon the trial court a duty to obtain a limited probation report on the facts relevant to a determination of the amount of a Penal Code section 1202.4, subdivision (b) restitution fine.[10]

Romero has forfeited his argument by failing to object. (See *People v. Anzalone* (2013) 56 Cal.4th 545, 550 ["'The requirement of an objection is premised upon the idea that a party should not sit on his or her hands, but instead must speak up and provide the court with an opportunity to address the alleged error at a time when it might be fixed.' [Citation.]"].)

We reject Romero's contention, raised in the alternative, that his counsel's failure to object constituted ineffective assistance of counsel. As discussed above, to establish ineffective assistance of counsel, an appellant bears the burden of showing

---

[10]     Penal Code section 1203, subdivision (g) provides: "If a person is not eligible for probation, the judge shall refer the matter to the probation officer for an investigation of the facts relevant to determination of the amount of a restitution fine pursuant to subdivision (b) of Section 1202.4 in all cases in which the determination is applicable. The judge, in their [sic] discretion, may direct the probation officer to investigate all facts relevant to the sentencing of the person. Upon that referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court containing findings. The findings shall include a recommendation of the amount of the restitution fine as provided in subdivision (b) of Section 1202.4."

prejudice, meaning a reasonable probability that but for the challenged act or omission of counsel, the appellant would have obtained a more favorable result. (*Centeno*, *supra*, 60 Cal.4th at pp. 674-676; see also *In re Crew*, *supra*, 52 Cal.4th at p. 150.) Romero has failed to satisfy his burden of showing a reasonable probability that he would have been awarded a lower restitution fine had trial counsel objected.[11]

---

[11] We also note that although the court imposed a $1,200 restitution fine, which was higher than the $300 minimum, the restitution fine imposed was considerably lower than the $10,000 maximum. (Pen. Code, § 1202.4, subd. (b)(1).) It was also lower than the $1,800 amount that would have been imposed had the trial court utilized the commonly-used formula provided by the Legislature in Penal Code section 1202.4, subdivision (b)(2).

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.