Filed 6/28/22  Rizzardi v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| RUSSELL RIZZARDI, | C094713 |
| Petitioner, | (Super. Ct. No. 97FL03120) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| SANDRA RIZZARDI, | |
| Real Party in Interest. | |

Petitioner Russell Warren Rizzardi (Russell), through a Petition for a Writ of Review, asks this court to annul and set aside a May 17, 2021, Statement of Decision and Order of Contempt (Contempt Order) and an August 4, 2021, order sentencing him to

1

145 days in county jail (sentence). According to the Contempt Order, Russell is in contempt of a July 1998 stipulated judgment that requires him to pay his ex-wife, Real Party in Interest Sandra Lucille Rizzardi (Sandra) $1,700 per month in spousal support.

Russell's argument that he is entitled to relief has two prongs. First, he argues that, under the facts of this case, Sandra was obligated to prove he had the ability to pay support beyond a reasonable doubt. Next, he argues that the trial court's finding regarding the extent to which he had the ability to pay was too vague and equivocal, and, therefore, it cannot be sustained. We deny Russell's request for relief.

## FACTS AND HISTORY OF THE PROCEEDINGS

### History Prior to 2019 Orders to Show Cause

Russell and Sandra were married in October 1976, and divorced in December 1997. On July 7, 1998, the Superior Court for County of Sacramento (trial court) entered a stipulated judgment on reserved issues that ordered Russell to pay Sandra $1,700 per month in spousal support until the death of either party, marriage of Sandra, or further order of the court, whichever occurred first. Russell and Sandra did not have any children together.

In April 2001, Russell married again. The marriage produced two children, one was born in 2002 and the other in 2004. Russell and his second wife separated, and entered into a judgment of legal separation in October 2010 in the Superior Court for the County of Contra Costa. According to the terms of that judgment, Russell would pay his estranged wife $5,200 per month in child support. The judgment also required Russell to pay $15,000 per year to fund an educational account for each child—for a total of $30,000—on the condition of his receiving a bonus, with Russell's obligation to make a payment for the educational fund of one of the children ending in 2021 and the other ending in 2023.

2

On April 30, 2015, the trial court found Russell in contempt for failing to make spousal support payments to Sandra between May 2013 and September 2013, for a total unpaid amount of $8,500. Russell was given until September 1, 2015, to comply with the order, which he did not do. He was sentenced to 10 days in jail and served five.

On March 10, 2016, the trial court again found Russell in contempt for failing to make 12 spousal support payments, totaling $20,400. Russell was given until June 15, 2016, to comply, which, again, he did not do. He was held in contempt and was sentenced to (and served) 60 days in jail.

The trial court issued an order to show cause regarding contempt for failure to make support payments on December 8, 2017, but the order to show cause was dismissed prior to trial in June 2018, because Russell made some form of support payment.

In April 2018, Russell paid Sandra a total of $40,800, $20,400 of which covered support owing from January thru December 2017.

Based on the record before us, it appears the other April 2018 payment of $20,400 may have been to settle the March 10, 2016, contempt order, but we cannot be certain. In November 2018, pursuant to a court order, Russell began making monthly payments to Sandra in the amount of $500 per month to pay down arrears on prior unpaid spousal support payments.

*Contempt Trial and Post-Trial Briefs*

On September 20, 2019, and August 27, 2020, the trial court issued orders to show cause as to why Russell should not be found in contempt for willfully violating the spousal support order. The two orders to show cause were consolidated into one action, and trial was held on February 18, 2021, and April 16, 2021. The trial covered Russell's nonpayment in his continuing support obligation from January 2018 through June 2020, a 30-month time period.

Sandra testified that from January 2018 through June 2020, Russell paid nothing of the $1,700 monthly amount due on his continuing support obligation to Sandra, and Russell did not dispute this fact. She only received the April 2018 payments totaling $40,800 that paid off some of his arrears for payments due before 2018, including $20,400 worth that stemmed from nonpayment in 2017; and the $500 monthly arrears payment, which began in November 2018.

Russell did not testify on his own behalf and exercised his right to not be called in the case in chief of the other party.

The parties stipulated that Russell's gross earnings were $183,895 in 2018; $183,947 in 2019; and over $130,742.44 in January through June 2020. Based on the paystubs Russell submitted, the gross earnings for the first half of 2020 included his annual bonus. At the time of trial, to the extent possible, Russell's child support payments were collected directly from his paycheck. The parties stipulated to the admission of a table capturing Russell's take-home pay and payments to Sandra from January 2018 through June 2020. The table recorded Russell's take-home pay after child support deductions. According to the table, if the $40,800 in payments on arrears Russell made to Sandra came out of his take-home pay for 2018, his take-home pay was reduced to -$470.52 per month in 2018, and it was $3,116.48 per month in 2019, and $3,150.76 in 2020.

Russell's counsel argued that, with an average take home pay of approximately $3,000, per month after the payment of his child support obligation, if Russell were to make his monthly $1,700 payment to Sandra, the amount of funds he would have left to live on would place him below the poverty guidelines.

Sandra's counsel argued that Russell's child support payment was in excess of guideline amounts; that Russell had argued he is not able to pay spousal support in every proceeding dealing with his obligation to pay Sandra for many years; and that when he attempted to terminate his spousal support obligation in 2012 using the same argument,

4

the trial court found Russell still had the ability to make the support payment, and that if he was having difficulty making the payments he could go to the Contra Costa Superior Court and seek a modification of that order that would enable him to both make a reasonable child support payment in that matter and the spousal support order he had agreed to pay Sandra.

After some discussion among the parties, the trial court observed that, because the spousal support would be treated like a pre-tax deduction, the $1,700 per month actually would have an impact on Russell's net take-home pay of about $900 to $1,000, which Sandra's counsel argued was not too little for Russell to live off.

In post-trial briefing Russell argued that, though normally in a contempt hearing it would be the defaulting spouse's obligation to prove an inability to pay, given the length of time that had passed since the entry of the spousal support order, it was Sandra's burden to prove he had the ability to make the spousal support payments under *Mery v. Superior Court* (1937) 9 Cal.2d 379, 380-381 (*Mery*) and *In re Ivey* (2000) 85 Cal.App.4th 793, 798-799 (*Ivey*). He argued that the evidence before the trial court demonstrated that, at most, Russell had an ability to make a partial—rather than whole—payment on his continuing monthly obligation of $1,700 between January 2018 and June 2020.

Sandra argued that Russell's reliance on *Mery* and *Ivey* was misguided given the more recent history in the case, including the fact that in October 2018, the trial court ordered Russell to make a $500 per month payment on his then-existing spousal support arrears, implying that the trial court had concluded that Russel could pay $500 a month *in addition to* the $1,700 he was already obligated to pay.

## Contempt Order

The trial court issued its contempt order on May 17, 2021. In its analysis, the trial court noted that Russell had failed to provide any authority to support "the proposition

5

that the amount withheld under the child support withholding order is in itself evidence that he lacks the ability to pay, or sets a ceiling regarding how much total support [Russell] is required to pay amongst all obligors."

The trial court acknowledged that the most recent available case law on the burden of proof issue provides "that the passage of considerable time between the original spousal support order and the charge of contempt shifts the burden to prove ability to pay to" the person trying to collect unpaid support, and a 10-year gap is considered substantial enough to warrant the shift. But the trial court also noted that, particularly in light of various changes in statutory laws reflecting shifting policies since *Mery* was decided in 1937, the reasoning in *Mery* may be out-of-date; and, to the extent *Ivey* may have acknowledged the *Mery* rule, it did so in an instance where it ultimately decided the passage of time was short enough that *Mery* would not apply.

The trial court also observed that, in this case, "the facts surrounding [Russell's] net income after taxes and child support [were] not contested. The issue was the consequence of those facts in a trial asserting [Russell's] contempt of court."

The trial court then found that Sandra "has established beyond a reasonable doubt that, while [Russell] could not have paid the entire $1,700 monthly support with only $3,000/month of income, he had the ability to pay *something* over and above the arrearage payment of $500. [Russell]'s evidence did not establish by a preponderance of the evidence that he was incapable of paying any additional amount against the $1,700 per month continuing obligation.

"The fact that [Russell] chose to pay $500 on the support obligation, and not a dollar more or a dollar less, appears to be an arbitrary decision not associated with reasoned financial calculations. Since [Russell] did not pay *any* money against the $1,700 per month when he could have paid *something* towards it each month, the court finds [Russell] in contempt of court for each of the counts charged against him.

6

"Evidence, both oral and documentary, having been received and considered, the matter having been argued and submitted and good cause appearing therefor,

"The Court HEREBY FINDS that Russell Rizzardi, Petitioner herein, is guilty of contempt of court on each of the 29 counts for failure to obey the stipulated judgment of this court made on July 7, 1998, directing [Russell] to pay spousal support in the amount of $1,700 per month to Respondent in that he knew of the foregoing order, had (and still has) the ability to comply with the foregoing order, and willfully disobeyed the foregoing order."

The trial court then set the matter for sentencing.

*Sentencing Hearings and Order*

The trial court held a hearing to pronounce judgment and a sentence on June 1, 2021. Russell's counsel requested that sentencing be delayed to another day. Citing *Lyon v. Superior Court* (1968) 68 Cal.2d 446, he argued that while it was acceptable for the trial court to make a finding of contempt based on partial ability to pay, there is a "requirement of specificity" when the trial court pronounces the extent to which a contemnor has the ability to pay. Counsel requested that the trial court make specific findings regarding the extent to which Russell had the ability to comply, "so that Mr. Rizzardi could have a chance to purge the contempt."

The trial court responded that its problem with honoring the request was that Russell had given it "no information" with which to make a calculation other than " 'I can't afford to pay anything.' And as a result of that, how is the Court to make a determination of whether he can afford to pay $1, $100, or $1,000." After some discussion between the court and the parties, it was agreed that they would continue the hearing and Russell would submit both an income and expense declaration and guideline child support calculations. Russell was given two weeks, until June 15, 2021, to submit his papers, and another hearing was set for August 3, 2021.

7

At the August 3, 2021, hearing, when the trial court asked if counsel had anything further to say, Russell's counsel again asked if, in line with *Lyon*, the trial court would make a finding of whether the extent of Russell's ability to pay the support was full or partial, and "if it's partial, what the amount of his ability to pay is so we can make some arrangements further down the road." The trial court stated that had Russell indicated he would be making any payments, it would have been open to place him on probation, but "I did not get anything from you indicating the desire to be put on probation in order to be able to make payments." The court added, "this court has already made the determination that he's able to pay and could have paid in full, and that at this point, there would be no more need to continue the sentencing."

The trial court then asked if there was anything specific Russell's counsel wished to bring up regarding his ability to pay, which might serve as a payment in substitute for straight time. His counsel proposed, based on Russell's stated expenses and child support obligations, that his client should be able to pay $800 per month. After looking at the guideline child support calculations Russell provided, the trial court determined that if Russell were paying guideline child support amounts, his net monthly income would be between approximately $7,000 and $8,000 after the child support payments were made. The trial court was not inclined to accept payment of $800 per month on that basis. When Sandra's counsel proposed allowing Russell to serve probation on the condition that he continue his $500 monthly arrears payment, meet his continuing obligation to pay $1,700 a month in spousal support, and pay off the arrears for January 2018 through June 2020 at a rate of $4,108 per month for a total monthly payment of $6,308, Russell's counsel said that would not be doable.

The trial court sentenced Russell 5 days in jail for each of 29 counts, for a total of 145 days.

*Petition for Review, Stay, and Order to Show Cause*

Russell sought to annul the contempt order and his sentence with a petition for writ review in the appellate division of the Sacramento Superior Court. The superior court determined it had no jurisdiction over the petition, and directed it to the attention of this court. We treated the Petition for Writ Review as a petition for writ of mandate, issued a stay of Russell's jail sentence, and issued an order to show cause as to why the relief Russell requested should not be granted.

DISCUSSION

I

*The Record and Citations to It*

In his reply brief, citing California Rules of Court, rule 8.204(a)(1)(C), Russell asks us to "entirely disregard[]" factual assertions made by Sandra in her answer to his petition on the basis that she fails to support those assertions with specific citations to the record. " ' "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." ' (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856, [].) Because '[t]here is no duty on this court to search the record for evidence' (*Belli v. Curtis Pub. Co.* (1972) 25 Cal.App.3d 384, 394, fn. 5, []), an appellate court *may* disregard any factual contention not supported by a proper citation to the record (*Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109, 1154, []; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979, [])." (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379.) We will not exercise our discretion to disregard all facts that Sandra has not supported with specific citations to the record here.

9

## II

### *The Trial Court Properly Found Russell in Contempt*

Russell argues it was Sandra's responsibility to prove he had an ability to continue paying the spousal support order, that the trial court failed to reach a finding regarding his specific ability to pay the order, and that, as a result we must discharge the contempt order. We disagree.

### A. The Trial Court Found Russell Could Pay All of the Support Order

We start by addressing the second half of Russell's argument, namely his position that the trial court failed to make a definite finding regarding his ability to pay. As Russell aptly notes, case law suggests that when the trial court finds a contemnor has an ability to pay an order, it is not sufficient that the contempt order say the contemner can pay something; rather, the contempt order must indicate specifically how much the contemner can pay. (See *Lyon v. Superior Court of Los Angeles County, supra,* 68 Cal.2d at p. 450 ["the requirement that the finding of ability to pay must be definite and certain"]; *Powers v. Superior Court of Shasta County* (1967) 253 Cal.App.2d 617, 620 [voiding a contempt order in which the trial court found "that petitioner had the ability to comply 'in a much more substantial way than he actually did' "]; *In re Michelena* (1957) 150 Cal.App.2d 377, 378 ["the phrase 'to a greater extent[]' . . . is a relative phrase, and not subject to interpretation with any exactitude" and will not support a finding of contempt].)

However, we disagree with Russell's position that the trial court failed to make a definite finding. The trial court found that, based on the evidence before it, Russell had the ability to pay his entire monthly support obligation to which he had stipulated on July 7, 1998.

After the trial court issued the contempt order, after Russell submitted an income and expense declaration and guideline child support calculations, and after Russell's

counsel asked the trial to make a more specific finding regarding Russell's ability to pay, the trial court said on the record, "this court has already made the determination that *he's able to pay and could have paid in full*, and that at this point, there would be no more need to continue the sentencing." (Italics added.) Hence, the trial court found that Russell had the ability to pay his spousal support obligation in full both when he was not paying it over the years *and* at the time of sentencing.

B. <u>Sufficient</u> <u>Evidence</u> <u>Supports</u> <u>the</u> <u>Trial</u> <u>Courts</u> <u>Finding</u>

When courts of appeal review an adjudication of contempt, " 'the sole question before us is one of jurisdiction of the trial court to render the judgment under review, and in such a case the review of the evidence is limited to determining whether there was any substantial evidence to sustain the jurisdiction of the trial court.' [Citations.] . . . '[T]he responsibility of the reviewing court is merely to ascertain whether there was sufficient evidence before the trial court to sustain the judgment and order. The power to weigh the evidence rests with the trial court.' [Citations.]" (*In re Buckley* (1973) 10 Cal. 3d 237, 247.)

Here, Russell argues that, as part of her case, Sandra had the obligation to prove he had the ability to pay the support order. Yet, because he takes the position that the trial court did not find he could have paid a specific amount, Russell never reviews the evidence submitted, nor does he argue that evidence was insufficient to support the courts actual finding, which is that he had the ability to pay the support order "in full." It is significant that Russell, by entering into the stipulation for support in 1998, necessarily agreed that he had the ability to pay Sandra $1,700 a month in support, a definite figure. It is also significant that he did not in the many years that followed file a formal motion to modify that support order.

Instead, Russell appears to use his burden of proof argument to suggest if the trial court was unable to identify an exact number he should have been paying, that is because

Sandra failed to meet her burden of proof. Given the history of Sandra's efforts to enforce the spousal support order and Russell's history of ignoring it, we briefly discuss the issue of the burden of proof as to Russell's ability to pay.

Generally, "[t]he elements of proof necessary to support punishment for contempt" due to failure to make payments on a support order "are: (1) a valid court order, (2) the alleged contemnor's knowledge of the order, and (3) noncompliance. (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 428 [] [(*Moss*)]; Code Civ. Proc., § 1209, subd. (a)(5).)" (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1014; see also *In re Marriage of Sachs* (2002) 95 Cal.App.4th 1144, 1152-1153 (*Sachs*).)

Notably, "in *Moss[, supra,]* 17 Cal.4th 396 [] [], our Supreme Court held that the '[a]bility to comply with a support order is not an element of the contempt which must be proven beyond a reasonable doubt by the petitioner. Inability to comply is an affirmative defense which must be proven by a preponderance of the evidence by the alleged contemner.' (*Id.* at p. 425.) '[A]bility to pay has traditionally been considered an affirmative defense in contempt proceedings.' (*Id.* at p. 426.)" (*Sachs, supra*, 95 Cal.App.4th at p. 1152; see also *Ivey, supra*, 85 Cal.App.4th at pp. 798-799.) Thus, generally, in the context of considering contempt of support orders, once an aggrieved party demonstrated the existence of a valid court order, the contemner's knowledge, and noncompliance " 'beyond a reasonable doubt the violation is established. He or she need go no farther. To prevail on the affirmative defense of inability to comply with the support order, the contemner must prove such inability by a preponderance of the evidence.' ([*Moss, supra*, 17 Cal.4th] at p. 428.)" (*Sachs, supra*, 95 Cal.App.4th at pp. 1152-1153.)

In *Mery, supra*, 9 Cal.2d 379, 380, our Supreme Court observed that affidavits charging contempt of support orders, at that time, generally did not need to allege the contemner had the ability to comply with an order because " '[w]here the ability of the contemner to comply with the order has already been determined by the court, it has been

12

held that it is only necessary that the affidavit allege the making of the order and the refusal to comply with it.' " However, the *Mery* court would not allow a contempt proceeding to issue on the basis that a 10-year-old support order demonstrated an ability to pay, " 'because an adjudication of the defendant's ability to pay in 1926 is no sound proof of that fact under the conditions existing in 1936.' " (*Id.* at p. 380.) In *Ivey, supra,* 85 Cal.App.4th at pages 799 and 802, our Second District Court of Appeal cited *Mery* as authority for the rule that "[a]bility to pay becomes an element of the contempt only when the alleged contempt occurs many years after the underlying order," but found that the rule did not apply in that case.

Citing changes to the family law code since *Mery* was decided, the trial court questioned whether the burden-shifting it applies to the issue of a support obligor's ability to pay has become out-of-date. Though we decline to suggest that *Mery* should be overturned on this point, we find that, here, on this record, Sandra did not bear the burden of proof regarding Russell's ability to pay.

Referencing *Moss's* discussion of contempt proceedings regarding child support orders, and applying it to child *and* spousal support orders, *Sachs* lists three reasons why, in most general contempt proceedings involving the alleged nonpayment on support orders, a contempt petitioner does not have the burden to prove the alleged contemner had the ability to pay and, instead, an alleged contemner may raise an affirmative defense of—and take on the burden to prove—an inability to pay. (*Id.* at pp. 1153-1154.) "First, '[t]he ability of the parent to pay the amount of support ordered has [already] been determined by the court that made the order.' ([*Moss, supra*, 17 Cal.4th] at p. 428.) [¶] Second, like the rule of convenience applicable to many defenses, ' "[t]he contemner is the person in the best position to know whether inability to pay is even a consideration in the proceeding and also has the best access to evidence on the issue, particularly in cases of self-employment. Considerations of policy and convenience have led courts to sanction placement of the burden of establishing a defense on defendants under similar

13

circumstances . . . ." ' (*Moss*, *supra*, 17 Cal. 4th at p. 427.) 'Common sense dictates that the contemner raise inability to pay.' (*In re Feiock* (1989) 215 Cal.App.3d 141, 146 [], overruled on another point in *Moss*, *supra*, 17 Cal.4th at p. 428.)" (*Sachs*, *supra*, 95 Cal.App.4th at p. 1153.) "Finally, we note that a spouse who is experiencing financial difficulty in making support payments can avoid the possibility of contempt by filing an application to reduce support and demonstrating a material change in circumstances. (See Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) PP 17:25 to 17:64.5, 17:135 to 17:232, 17:360 to 17:410, pp. 17-8 to 17-17, 17-32.3 to 17-56.1, 17-82 to 17-90.2.)" (*Sachs*, *supra*, 95 Cal.App.4th at p. 1154.)

The *Mery* court shifts the burden due to a weakening of the first factor identified by *Sachs*: given the passage of time, using the existing order to establish the obligor has the ability to pay the award becomes a much less reliable proposition. Russell would have us look to the date of the original spousal support order—1998—and say Sandra must now forever bear the burden to prove his precise ability to pay support, despite the facts that (a) he still has better information regarding his financial condition; (b) the more efficient path to come up with a more up-to-date calculation regarding Russell's ability to pay remains with him to bringing a motion to modify the support order in which the parties would file income and expense declarations and presumably not claim that to do so violated their rights against self-incrimination; and (c) the trial court's most recent determinations regarding his ability to pay Sandra were not, in fact, in 1998; they were in 2015, 2016, and possibly 2018 and again, during this pending proceeding, in 2021. In short, the policies favoring leaving the burden to prove inability to pay on Russell remain valid. The risk of unfairness the *Mery* decision sought to avoid in shifting the burden does not exist here.

## DISPOSITION

Russell's request for writ relief annulling the trial court's order and sentence is denied. Real party in interest shall recover costs on appeal. (Cal. Rules of Court, rule 8.493.) The stay this court issued on September 16, 2021, is vacated.

_____
HULL, J.

We concur:

_____
ROBIE, Acting P.J.

_____
EARL, J.

15